Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas Jacobson (Cal. Bar No. 229288)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA HERNANDEZ, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiff,* | |
| vs. | Jury Trial Demanded |
| EVENT TICKETS CENTER, INC., | |
| *Defendant.* | |

# Table of Contents

I.      Introduction. ........................................................................................................... 1

II.     Parties. .................................................................................................................... 2

III.    Jurisdiction and venue. .......................................................................................... 2

IV.     Facts. ...................................................................................................................... 3

    A.      Drip pricing is unfair and illegal. ...............................................................3

    B.      Event Tickets Center, Inc.'s checkout process.............................................5

    C.      Plaintiff purchased tickets from Event Tickets Center. .............................10

    D.      Class Action Allegations.............................................................................11

V.      Claims. ................................................................................................................. 12

    First Cause of Action:  Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq. ..........................................................................................12

    Second Cause of Action: Violation of California's Consumer Legal Remedies Act .............13

    Third Cause of Action: Unfair Competition Law ...............................................15

    Fourth Cause of Action: Quasi-Contract.............................................................16

VI.     Prayer for Relief. ................................................................................................. 17

## I.     Introduction.

1.      In recent years, companies that sell goods and services have sought to boost revenues by adding junk fees.  One example is the use of "drip pricing," where companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[1]  Such fees are deceptive and unfair "because they are disclosed only at a later stage in the consumer's purchasing process."[2]  "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[3]

2.      This is costly for consumers, who "are paying billions of dollars a year in unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value. These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy."[4]  As the Federal Trade Commission notes, "American consumers, workers, and small businesses today are swamped with junk fees that frustrate consumers, erode trust, impair comparison shopping, and facilitate inflation."[5]

---

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[2] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[3] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[4] https://www.whitehouse.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

[5] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

3.      Defendant Event Tickets Center, Inc. ("Event Tickets Center" or "Defendant") is a secondary ticket marketplace where consumers can purchase resale tickets to thousands of national and local events. For years, Defendant sold tickets online using drip pricing and hidden fees—advertising one price for the ticket, only to tack on mandatory fees at the very end.[6]  The hidden fees were only disclosed in the fine print, in small, gray font.  Thus, consumers missed the fees, and were unaware that they were paying substantial fees.

4.      Plaintiff purchased tickets from Event Tickets Center.  The tickets had hidden fees, which she did not notice until after she had made the purchase.  Plaintiff brings this case on behalf of California consumers who were also charged hidden fees by Event Tickets Center.

**II.    Parties.**

5.      Plaintiff Kristina Hernandez is domiciled in Citrus Heights, California.

6.      The proposed class includes citizens of California.

7.      Defendant Event Tickets Center, Inc. is a Florida corporation with its principal place of business in Gainesville, Florida.

8.      Defendant operates the Event Tickets Center website, at www.eventticketscenter.com.

**III.   Jurisdiction and venue.**

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

10.     The Court has personal jurisdiction over Defendant because it does business in California. It advertises and sells event tickets in California, and serves a market for its event tickets in California. Due to Defendant's actions, its event tickets have been marketed and sold to consumers in California, and harmed consumers in California. Due to Defendant's actions, Plaintiff purchased tickets on Event Tickets Center's website, and paid illegal hidden fees. Plaintiff was harmed in California.

11.     Venue is proper under U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling event tickets to Plaintiff.

---

[6] Defendant changed its practices on or around March 2024.

**IV.     Facts.**

> **A.     Drip pricing is unfair and illegal.**

12.      "As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns'" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[7]

13.     One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[8] In the ticketing space, companies advertise one price for a ticket, and then load the purchase up with additional fees at the end of the checkout process. The goal of this is to conceal the true cost of the ticket and prevent comparison shopping. The consumer selects and decides to purchase the ticket based on a lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

14.     The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[9] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[10] By then, consumers have already committed to the purchase.

15.     Drip pricing costs consumers a lot of money. For example, when buying tickets, consumers rely on the initial price, spend more money, and make purchases that they otherwise would not have made.[11]

---

[7] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[8] *Id.*

[9] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[10] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[11] *Id.* at 9.

16.     Drip pricing also harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[12]

17.     Thus, the Federal Trade Commission has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[13]

18.     Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[14] Because drip pricing is unfair and deceptive in violation of the FTC Act, the FTC has proposed specific rules banning junk fees under its rulemaking authority.[15]

19.     Drip pricing is also illegal under California law.  According to the California legislature, "This practice, like other forms of bait and switch advertising, is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."[16] *See, e.g.,* Cal. Bus. & Prof. Code § 17200 (California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices); Cal. Bus. Prof. Code §17500 (False Advertising Law prohibits businesses from making statements that they know or should know to be untrue or misleading).

---

[12] *Id.*
[13] *Id.*
[14] https://www.ftc.gov/enforcement/rulemaking
[15] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees
[16] Consumer Legal Remedies Act: advertisements., CA S.B. 478, 2023.

20.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(9).[17]  Thus, advertising tickets at a lower price, with the intent not to sell them as advertised at that price, also violates California's Consumer Legal Remedies Act.

**B.      Event Tickets Center, Inc.'s checkout process.**

21.     Prior to March 2024, Event Tickets Center used drip pricing, and hid the true price of the ticket until the purchase was almost complete. For each of Event Tickets Center's tickets, Event Tickets Center used drip pricing and added a mandatory fee at the end of the checkout process.  The fee was hidden from consumers throughout the checkout, and only disclosed in small, fine print at the very end of the checkout process.

22.     The example used below is representative of Event Tickets Center's checkout process for tickets sold prior to March 2024.  In all relevant respects, throughout the entire statute of limitations period until on or about March 2024, the online ticket sales process for Event Tickets Center were substantially similar.

23.     When a consumer visited Defendant's website, www.eventticketscenter.com, the homepage advertised tickets for a variety of featured events. After selecting the event they would like to purchase a ticket to, the consumer was presented with a list of upcoming events that they could choose from, based on date and location.

---

[17] Starting on July 1, 2024, drip pricing (that is, "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges") is also specifically enumerated as violating the California Legal Remedies Act.

24.     After the consumer selected a particular event on a particular date, they were taken to a seat map page where they could begin the checkout process and select the quantity, price, and location of their desired tickets. On the left side of the screen, specific seats were listed at specific prices.  There was no disclosure of any additional fees.  A representative example is shown below.

*Captured February 29, 2024*



25.     After the consumer selected a seat, the consumer was presented with a pop-up on the left side of the screen to confirm the quantity of their tickets and continue to checkout. In the example below, the price for 2 concert tickets was represented as $828 for 2 tickets, or $414 for 1 ticket.  Customers were then directed to "Continue to Checkout."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16

26.     On the next screen, the consumer was asked to enter their email address to receive

17

their tickets and receipt. In the example below, the ticket price was again listed for $828 for 2 tickets,

18

or $414 each, as seen on the top-right side of the screen.

19
20
21
22
23
24
25
26
27
28



27.    At the final stage of the checkout process, the consumer was asked to fill in their

billing information before finalizing their purchase. In the example below, the ticket price was again

listed for $828 for 2 tickets, or $414 for 1 ticket, as seen on the top-right side of the screen.



28.     Customers were then directed to enter their payment information and offered ticket insurance, after which they could place their order:



29.     But at the very bottom of the screen, above the "Place Order" button, in small gray font, Event Tickets Center listed a new total.  In the example above, the price of the tickets had increased to $1092.96. This was an increase of over $200 from the prices shown on the three preceding screens.  Thus, the price increased substantially during the ticket process.  And, this was the first and only time that the actual total price is displayed before purchase— at the very end of the process, in hidden fine print.

30.     Because the full price was only disclosed once — in small type, in low contrast gray text—consumers never saw the total price of the tickets.  The text was not set apart from the surrounding text; instead, it was buried in the fine print.  It was designed to go unnoticed.  This was in contrast to, for example, the blue button that directs consumers to "PLACE ORDER."  Thus, reasonable consumers missed the disclosure of total price, and did not realize that they were paying substantial fees.  They relied on the original ticket price (which was repeatedly advertised by Event Tickets Center in all the prior screens), and believed that they would pay the original ticket price. They were deceived into paying the additional fees.

31.     In addition, because Event Tickets Center waited until the very end of the checkout process to disclose the true price (in hard to see gray print), it was difficult for consumers to accurately compare ticket prices across other event ticket platforms.  Not only did this frustrate comparison shopping, but it impeded competition and led consumers to pay more for their ticket than they otherwise would have.

32.     Event Tickets Center also failed to disclose the amount of the fee.  In the final price, a general reference was made to "service" and "delivery fees."  The amount of each fee, or the total amount of the fees, was not disclosed after the purchase.  Thus, consumers did not know how much they were paying in fees, or what fees they were paying.

**C.     Plaintiff purchased tickets from Event Tickets Center.**

32.     On April 19, 2022, Ms. Hernandez purchased two concert tickets through Event Tickets Center's website, www.eventticketscenter.com.  At the time, Ms. Hernandez was living in Citrus Heights, California.

33.     During the checkout process, Event Tickets Center represented that the total would be $206 for two tickets. Ms. Hernandez believed that the total of these tickets would cost $206. But at the very end of the checkout process, in small gray font buried in the fine print, Event Tickets Center added additional fees.  This made the actual ticket price $307.40, not $206, as Event Tickets Center had previously represented.

34.     Because Event Tickets Center did not disclose the true price until the end of the purchase process, and only disclosed the fee in small gray font in the fine print, Ms. Hernandez did

not realize she was paying an additional service fee. She believed that the price of her tickets was $206. She did not know that she paid additional fees until after she had already made the purchase.

35. Ms. Hernandez was harmed by paying Event Tickets Center's illegal and unfair service fee and delivery fee. If Event Tickets Center had not used drip pricing and hidden its mandatory fees, Plaintiff would have paid less for the tickets.

**D.    Class Action Allegations.**

36. Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who, while in the state of California and within the applicable statute of limitations and before March 1, 2024, purchased tickets from www.eventticketscenter.com (the "Class").

37. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability.**

38. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are thousands or tens of thousands of class members.

39. Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions.**

40. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- whether Event Tickets Center's drip pricing is unfair;
- whether Event Tickets Center's drip pricing is illegal under California's consumer protection statutes and the FTC Act;
- what damages are needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy.**

41.    Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased tickets from Event Tickets Center. There are no conflicts of interest between Plaintiff and the class.

**Superiority.**

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.    Claims.**

<u>**First Cause of Action:**</u>

**Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq.**

**(By Plaintiff and the Class)**

43.    Plaintiff incorporates each and every factual allegation set forth above.

44.    Plaintiff brings this cause of action on behalf of herself and members of the class.

45.    Defendant have violated Section 17500 of the Business and Professions Code.

46.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in their advertisements to class members.

47.    Defendant did this by advertising false prices for their tickets.  Defendant advertised prices that were lower than the true prices of their tickets.

48.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

49.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements about the ticket prices when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

50.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

51.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.

52.     Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

## Second Cause of Action:

## Violation of California's Consumer Legal Remedies Act

## (By Plaintiff and the Class)

53.     Plaintiff incorporates each and every factual allegation set forth above.

54.     Plaintiff brings this cause of action on behalf of herself and members of the class.

55.     Plaintiff and the class are "consumers," as the term is defined by California Civil Code § 1761(d).

56.     Plaintiff and the class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

57.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

58.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in their advertisements to class members.  Defendant did this by advertising ticket prices that were lower than the true prices for the tickets.  Defendant also did this by using drip pricing and hidden fees.

59.     Defendant violated, and continue to violate, Section 1770(a)(9) of the California Civil Code.  Defendant violated this by advertising their tickets as being for a specific price, when in fact

Defendant did not intend to sell the Products at that price.  Defendant intended to sell the tickets at a higher price than the advertised price.

60.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

61.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the tickets.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

62.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

63.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.

64.     Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

65.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the class, seeks injunctive relief.

66.     CLRA § 1782 NOTICE.  On July 19, 2024, a CLRA demand letter was sent to Defendant Event Tickets Center's Florida office, and to Defendant Event Tickets Center's California registered agent via Certified Mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. The demand letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

67.     A CLRA venue declaration is attached.

**<u>Third Cause of Action:</u> Unfair Competition Law**

**(By Plaintiff and the Class)**

68.     Plaintiff incorporates each and every factual allegation set forth above.

69.     Plaintiff brings this cause of action individually and on behalf of the class.

70.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unfair and unlawful conduct.

**The Unlawful Prong.**

71.     Defendant engaged in unlawful conduct by violating the FAL, CLRA, and the FTC Act, as alleged above and throughout.

**The Deceptive Prong**

72.     As alleged in detail above, Defendant's representations about its ticket prices, and the hiding of their mandatory fees and actual prices, was false and misleading.

73.     Defendant's representations were misleading to Plaintiff and other reasonable consumers.

74.     Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

**The Unfair Prong.**

75.     Defendant's conduct is unfair because the harm to the consumer greatly outweighs the public utility of Defendant's conduct.  There is no public utility to advertising lower-than-actual ticket prices.  There is no public utility to using junk fees.  Both of these practices mislead consumers on price, and prevents comparison shopping and competition.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Hidden and late-disclosed fees only injure healthy competition and harm consumers.  And companies could easily disclose any such fees upfront.

76.     Defendant violated established public policy by violating the FTC Act and the UCL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively

1  declared policy (that of the FTC Act and of the California legislature, which, as alleged above,

2  expressly declared that drip pricing is unfair and violates the UCL).

3      77.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive,

4  unscrupulous, and substantially injurious to consumers.

5      78.    Plaintiff and the class could not have reasonably avoided this injury.  As alleged

6  above, Defendant's fees and total price were not disclosed until after consumers selected their tickets.

7  And, because the disclosure was designed to go unnoticed (in small, gray font, buried in the fine

8  print), reasonable consumers did not see the disclosure.

9      79.    Defendant's use of hidden fees was a substantial factor and proximate cause in

10  causing damages and losses to Plaintiff and class members.

11      80.    Plaintiff and the class were injured as a direct and proximate result of Defendant's

12  conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had

13  known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price

14  premium due to the misrepresentation.

15                    **Fourth Cause of Action**: Quasi-Contract

16                    **(By Plaintiff and the Class)**

17      81.    Plaintiff incorporates each and every factual allegation set forth above.

18      82.    Plaintiff brings this cause of action individually and on behalf of the class.

19      83.    As alleged in detail above, Defendant's false and misleading advertising caused

20  Plaintiff and the class to purchase tickets through Event Tickets Center and to pay a price premium

21  for those tickets.

22      84.    Defendant's unlawful and unfair "convenience fees" caused Plaintiff and the class to

23  overpay for the tickets.

24      85.    In this way, Defendant received a direct and unjust benefit, at Plaintiff and the class's

25  expense.

26      86.    Plaintiff and the class seek restitution.

27  **VI.    Demand for Jury Trial.**

28      87.    Plaintiff demands the right to a jury trial on all claims so triable.

Class Action Complaint                     16                          Case No.

**VII.    Prayer for Relief.**

88.    Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, and statutory ages, where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Date: July 19, 2024                              Respectfully submitted,


                                                 By: */s/ Christin Cho*_____

                                                 Christin Cho (Cal. Bar No. 238173)
                                                 christin@dovel.com
                                                 Simon Franzini (Cal. Bar No. 287631)
                                                 simon@dovel.com
                                                 Jonas Jacobson (Cal. Bar No. 229288)
                                                 jonas@dovel.com
                                                 DOVEL & LUNER, LLP
                                                 201 Santa Monica Blvd., Suite 600
                                                 Santa Monica, California 90401
                                                 Telephone: (310) 656-7066
                                                 Facsimile: (310) 656-7069

                                                 *Attorneys for Plaintiff*