Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA HERNANDEZ and JULIE VARON, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>EVENT TICKETS CENTER, INC. and TICKETNETWORK, INC.,<br><br>*Defendants.* | Case No.  2:24-cv-01983-DAD-AC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

**Table of Contents**

I.      Introduction. ........................................................................................................... 1

II.     Parties. .................................................................................................................... 2

III.    Jurisdiction and venue. .......................................................................................... 3

IV.     Facts. ...................................................................................................................... 3

        A.      Drip pricing is unfair and illegal. ............................................................. 3

        B.      The checkout process on www.eventticketscenter.com. ........................... 5

        C.      Plaintiffs purchased tickets from Defendants. ........................................ 10

        D.      Class Action Allegations. ........................................................................ 11

V.      Claims. ................................................................................................................. 12

        First Cause of Action:  Violation of California's False Advertising Law,
                Bus. & Prof. Code §§ 17500 et. seq. ......................................................... 12

        Second Cause of Action: Violation of California's Consumer Legal Remedies Act ....... 13

        Third Cause of Action:  Violation of California's Unfair Competition Law .................... 16

        Fourth Cause of Action:  Quasi-Contract ............................................................... 18

VI.     Demand for Jury Trial. ......................................................................................... 18

VII.    Prayer for Relief. .................................................................................................. 18

## I.    Introduction.

1.    In recent years, companies that sell goods and services have sought to boost revenues by adding junk fees.  One example is the use of "drip pricing," where companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[1] Such fees are deceptive and unfair "because they are disclosed only at a later stage in the consumer's purchasing process."[2]  "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[3]

2.    This is costly for consumers, who "are paying billions of dollars a year in unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value. These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy."[4]  As the Federal Trade Commission notes, "American consumers, workers, and small businesses today are swamped with junk fees that frustrate consumers, erode trust, impair comparison shopping, and facilitate inflation."[5]

3.    Defendant Event Tickets Center, Inc. ("Event Tickets Center") is a secondary ticket marketplace where consumers can purchase resale tickets to thousands of national and local events.

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.202 2%20-%20FINAL.pdf

[2] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[3] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.202 2%20-%20FINAL.pdf

[4] https://www.whitehouse.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

[5] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

First Amended Class Action Complaint              1       Case No.  2:24-cv-01983-DAD-AC

4.      Defendant TicketNetwork, Inc. ("TicketNetwork" and, together with Event Tickets Center, "Defendants") is a secondary ticket marketplace where consumers can purchase resale tickets to concert, sport, and theater events around the country and the world. TicketNetwork furnishes the platform for Event Tickets Center's website, including the design and operation of the checkout process on the Event Tickets Center website. When customers select tickets on Event Tickets Center's website, they access a widget created by TicketNetwork that TicketNetwork controls. That widget displays information about the tickets, locations, prices, and fees. TicketNetwork also handles all customer support for Event Tickets Center's customers.

5.      For years, Defendants sold tickets online using drip pricing and hidden fees—advertising one price for the ticket, only to tack on mandatory fees at the very end.[6]  The hidden fees were only disclosed in the fine print, in small, gray font.  Thus, consumers missed the fees, and were unaware that they were paying substantial fees.

6.      Plaintiffs each purchased tickets from the Event Tickets Center website, www.eventticketscenter.com.  The tickets had hidden fees, which they did not notice until after they had made their purchase.  Plaintiffs bring this case on behalf of California consumers who were also charged hidden fees by Defendants.

## II.      Parties.

7.      Plaintiff Kristina Hernandez is domiciled in Citrus Heights, California.

8.      Plaintiff Julie Varon is domiciled in Rancho Mirage, California.

9.      The proposed class includes citizens of California.

10.     Defendant Event Tickets Center, Inc. is a Florida corporation with its principal place of business in Gainesville, Florida.

11.     Defendant Event Tickets Center is a secondary ticket marketplace that allows consumers to purchase event tickets through its website, www.eventticketscenter.com.

12.     Defendant TicketNetwork, Inc. is a Delaware corporation with its principal place of business in South Windsor, Connecticut.

---

[6] Defendants changed their practices on the Event Tickets Center website on around March 2024.

13.     Defendant TicketNetwork furnishes the platform and operates Event Tickets Center's website, www.eventicketcenter.com.

## III.     Jurisdiction and venue.

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

15.     The Court has personal jurisdiction over Defendants because they do business in California. They advertise and sell event tickets in California, and serve a market for their event tickets in California. Due to Defendants' actions, event tickets have been marketed and sold to consumers in California, and harmed consumers in California. Due to Defendants' actions, Plaintiffs purchased tickets on the Event Tickets Center website, and paid illegal hidden fees, while in California. Plaintiffs were therefore harmed in California.

16.     Venue is proper under 28 U.S.C § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state.  Defendants advertise and sell their Products to customers in this District, serve a market for tickets in this district, and Ms. Hernandez's claims arise out of Defendants' contacts with this forum. Venue is also proper under U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred here.

## IV.     Facts.

### A.     Drip pricing is unfair and illegal.

17.      "As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns'" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[7]

18.     One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late

---

[7] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.202 2%20-%20FINAL.pdf

in the buying process."[8] In the ticketing space, companies advertise one price for a ticket, and then load the purchase up with additional fees at the end of the checkout process. The goal of this is to conceal the true cost of the ticket and prevent comparison shopping. The consumer selects and decides to purchase the ticket based on a lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

19.    The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[9] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[10] By then, consumers have already committed to the purchase.

20.    Drip pricing costs consumers a lot of money. For example, when buying tickets, consumers rely on the initial price, spend more money, and make purchases that they otherwise would not have made.[11]

21.    Drip pricing also harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[12]

22.    Thus, the Federal Trade Commission has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[13]

---

[8] *Id.*
[9] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011
[10] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf
[11] *Id.* at 9.
[12] *Id.*
[13] *Id.*

Second Amended Class Action Complaint        4        Case No.  2:24-cv-01983-DAD-AC

23.    Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[14] Because drip pricing is unfair and deceptive in violation of the FTC Act, the FTC has proposed specific rules banning junk fees under its rulemaking authority.[15]

24.    Drip pricing is also illegal under California law.  According to the California legislature, "This practice, like other forms of bait and switch advertising, is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."[16] *See, e.g.,* Cal. Bus. & Prof. Code § 17200 (California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices); Cal. Bus. Prof. Code §17500 (False Advertising Law prohibits businesses from making statements that they know or should know to be untrue or misleading).

25.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(9).[17]  Thus, advertising tickets at a lower price, with the intent not to sell them as advertised at that price, also violates California's Consumer Legal Remedies Act.

**B.    The checkout process on www.eventticketscenter.com.**

26.    Prior to March 2024, Defendants used drip pricing, and hid the true price of the ticket until the purchase was almost complete. For each ticket sold, Defendants used drip pricing and added a mandatory fee at the end of the checkout process.  The fee was hidden from consumers throughout the checkout, and only disclosed in small, fine print at the very end of the checkout process.

---

[14] https://www.ftc.gov/enforcement/rulemaking
[15] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees
[16] Consumer Legal Remedies Act: advertisements., CA S.B. 478, 2023.
[17] Starting on July 1, 2024, drip pricing (that is, "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges") is also specifically enumerated as violating the California Legal Remedies Act.

27.    The example used below is representative of the checkout process on the Event Tickets Center website for tickets sold prior to March 2024.  In all relevant respects, throughout the entire statute of limitations period until on or about March 2024, the online ticket sales process on www.eventticketscenter.com was substantially similar.

28.    When a consumer visited www.eventticketscenter.com the homepage advertised tickets for a variety of featured events. After selecting the event they would like to purchase a ticket to, the consumer was presented with a list of upcoming events that they could choose from, based on date and location.

29.    After the consumer selected a particular event on a particular date, they were taken to a seat map page where they could begin the checkout process and select the quantity, price, and location of their desired tickets. On the left side of the screen, specific seats were listed at specific prices.  There was no disclosure of any additional fees.  A representative example is shown below.

*Captured February 29, 2024*



30.     After the consumer selected a seat, the consumer was presented with a pop-up on the left side of the screen to confirm the quantity of their tickets and continue to checkout. In the example below, the price for 2 concert tickets was represented as $828 for 2 tickets, or $414 for 1 ticket.  Customers were then directed to "Continue to Checkout."



31.     On the next screen, the consumer was asked to enter their email address to receive their tickets and receipt. In the example below, the ticket price was again listed for $828 for 2 tickets, or $414 each, as seen on the top-right side of the screen.



32.     At the final stage of the checkout process, the consumer was asked to fill in their billing information before finalizing their purchase. In the example below, the ticket price was again listed for $828 for 2 tickets, or $414 for 1 ticket, as seen on the top-right side of the screen.



33.    Customers were then directed to enter their payment information and offered ticket insurance, after which they could place their order:

34.    But at the very bottom of the screen, above the "Place Order" button, in small gray font, Defendants listed a new total.  In the example above, the price of the tickets had increased to $1092.96. This was an increase of over $200 from the prices shown on the three preceding screens. Thus, the price increased substantially during the ticket process.  And, this was the first and only time that the actual total price is displayed before purchase— at the very end of the process, in hidden fine print.

Second Amended Class Action Complaint          9          Case No.  2:24-cv-01983-DAD-AC

35.  Because the full price was only disclosed once — in small type, in low contrast gray text—consumers never saw the total price of the tickets.  The text was not set apart from the surrounding text; instead, it was buried in the fine print.  It was designed to go unnoticed.  This was in contrast to, for example, the blue button that directs consumers to "PLACE ORDER."  Thus, reasonable consumers missed the disclosure of total price, and did not realize that they were paying substantial fees.  They relied on the original ticket price (which was repeatedly advertised by Defendants in all the prior screens), and believed that they would pay the original ticket price.  They were deceived into paying the additional fees.

36.  In addition, because Defendants waited until the very end of the checkout process to disclose the true price (in hard to see gray print), it was difficult for consumers to accurately compare ticket prices across other event ticket platforms.  Not only did this frustrate comparison shopping, but it impeded competition and led consumers to pay more for their ticket than they otherwise would have.

37.  Defendants also failed to disclose the amount of the fee.  In the final price, a general reference was made to "service" and "delivery fees."  The amount of each fee, or the total amount of the fees, was not disclosed until after the purchase.  Thus, consumers did not know how much they were paying in fees, or what fees they were paying.

**C.    Plaintiffs purchased tickets from Defendants.**

38.  On April 19, 2022, Ms. Hernandez purchased two concert tickets through www.eventticketscenter.com.  At the time, Ms. Hernandez was living in Citrus Heights, California.

39.  During the checkout process, Defendants represented that the total would be $206 for two tickets. Ms. Hernandez believed that the total of these tickets would cost $206. But at the very end of the checkout process, in small gray font buried in the fine print, Defendants added additional fees.  This made the actual ticket price $307.40, not $206, as Defendants had previously represented.

40.  Because Defendants did not disclose the true price until the end of the purchase process, and only disclosed the fee in small gray font in the fine print, Ms. Hernandez did not realize she was paying an additional service fee.  She believed that the price of her tickets was $206.  She did not know that she paid additional fees until after she had already made the purchase.

41.     Ms. Hernandez was harmed by paying Defendants' illegal and unfair service fee and delivery fee. If Defendants had not used drip pricing and hidden its mandatory fees, Ms. Hernandez would have paid less for the tickets.

42.     On July 4, 2023, Ms. Varon purchased two concert tickets through www.eventticketscenter.com. At the time, Ms. Varon was living in Rancho Mirage, California.

43.     Ms. Varon went through the checkout process described above.

44.     During the checkout process, Defendants represented that the total would be $144 for two tickets. Ms. Varon believed that the total of these tickets would cost $144. But at the very end of the checkout process, in small gray font buried in the fine print, Defendants added additional fees. This made the actual total ticket price $197.15, not $144, as Defendants had previously represented.

45.     Because Defendants did not disclose the true price until the end of the purchase process, and only disclosed the true price including fees in small gray font in the fine print, Ms. Varon did not realize she was paying these additional fees. Ms. Varon read and reasonably relied on Defendants' price representations during the ticket selection and checkout process and she believed that the price of her tickets was $144. She did not know that she paid additional fees until after she had already made the purchase.

46.     Ms. Varon was harmed by paying Defendants' illegal and unfair service fee and delivery fee. Additionally, if Defendants had not used drip pricing and hidden its mandatory fees, Ms. Varon would not have purchased the tickets from Defendants or would have paid less for the them.

**D.     Class Action Allegations.**

47.     Plaintiffs bring the asserted claims on behalf of the proposed class of: all persons who, while in the state of California and within the applicable statute of limitations and before March 1, 2024, purchased tickets from www.eventticketscenter.com.

48.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3)

persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability.**

49.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are thousands or tens of thousands of class members.

50.     Class members can be identified through Defendants' sales records and public notice.

**Predominance of Common Questions.**

51.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- whether Defendants' drip pricing is unfair;
- whether Defendants' drip pricing is illegal under California's consumer protection statutes and the FTC Act;
- what damages are needed to reasonably compensate Plaintiffs and the proposed class.

**Typicality & Adequacy.**

52.     Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased tickets from www.eventticketscenter.com. There are no conflicts of interest between Plaintiffs and the class.

**Superiority.**

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.     Claims.**

**First Cause of Action:**

**Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq.**

**(By Plaintiffs and the Class)**

Second Amended Class Action Complaint            12            Case No.  2:24-cv-01983-DAD-AC

54.     Plaintiffs incorporate each and every factual allegation set forth above.

55.     Plaintiffs bring this cause of action on behalf of themselves and members of the class.

56.     Defendants have violated Section 17500 of the Business and Professions Code.

57.     As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in their advertisements to class members.

58.     Defendants did this by advertising false prices for their tickets.  Defendants advertised prices that were lower than the true prices of their tickets.

59.     Defendants' representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

60.     Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements about the ticket prices when purchasing the Products. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

61.     In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

62.     Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the class.

63.     Plaintiffs and the class were injured as a direct and proximate result of Defendants' conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

## Second Cause of Action:

### Violation of California's Consumer Legal Remedies Act

### (By Plaintiffs and the Class)

64.     Plaintiffs incorporate each and every factual allegation set forth above.

65.     Plaintiffs bring this cause of action on behalf of themselves and members of the class.

66. Plaintiffs and the class are "consumers," as the term is defined by California Civil Code § 1761(d).

67. Plaintiffs and the class have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

68. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

69. As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in their advertisements to class members. Defendants did this by advertising ticket prices that were lower than the true prices for the tickets. Defendants also did this by using drip pricing and hidden fees.

70. Defendants violated, and continue to violate, Section 1770(a)(9) of the California Civil Code. Defendants violated this by advertising their tickets as being for a specific price, when in fact Defendants did not intend to sell the Products at that price. Defendants intended to sell the tickets at a higher price than the advertised price.

71. Defendants' representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

72. Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the tickets. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

73. In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

74. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the class.

Second Amended Class Action Complaint          14          Case No. 2:24-cv-01983-DAD-AC

75. Plaintiffs and the class were injured as a direct and proximate result of Defendants' conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

76. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the class, seeks injunctive relief.

77. CLRA § 1782 NOTICE. On July 19, 2024, a CLRA demand letter was sent to Defendant Event Tickets Center's Florida office, and to Defendant Event Tickets Center's California registered agent via Certified Mail (return receipt requested) on behalf of Ms. Hernandez, that provided notice of Event Tickets Center's violations of the CLRA and demanded that Event Tickets Center correct the unlawful, unfair, false and/or deceptive practices alleged here. Event Tickets Center does not have a California headquarters. In her initial complaint, Ms. Hernandez sought only injunctive relief, and did not seek damages, on her CLRA claim. But she stated that if Event Tickets Center does not fully correct the problem for Ms. Hernandez and for each member of the class within 30 days of receipt, Ms. Hernandez and the class will seek all monetary relief allowed under the CLRA. Now, 30 days have passed and Event Tickets Center has not corrected the problem for Ms. Hernandez and for each member of the class. Accordingly, Ms. Hernandez seeks (1) all monetary relief available under the CLRA, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the class as a result of Event Tickets Center's unlawful conduct, and (2) all equitable relief under the CLRA including disgorgement, restitution, and an injunction. Ms. Hernandez also seeks reasonable attorneys' fees under the CLRA.

78. Out of an abundance of caution, even though Ms. Hernandez already provided notice to Event Tickets Center and demanded correction on behalf of the putative class and so no further notice was necessary, on January 24, 2025, a CLRA demand letter was sent to Event Tickets Center's Florida office, and to Event Tickets Center's California registered agent via Certified Mail (return receipt requested) on behalf of Ms. Varon, that provided notice of Event Tickets Center's violations of the CLRA and demanded that Event Tickets Center correct the unlawful, unfair, false and/or deceptive practices alleged here. Event Tickets Center does not have a California

headquarters.  Now, 30 days have passed and Event Tickets Center has not corrected the problem for Ms. Varon and for each member of the class.  Accordingly, Ms. Varon seeks (1) all monetary relief available under the CLRA, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the class as a result of Event Tickets Center's unlawful conduct, and (2) all equitable relief under the CLRA including disgorgement, restitution, and an injunction. Ms. Varon also seeks reasonable attorneys' fees under the CLRA.

79.    On May 14, 2025, CLRA demand letters on behalf of Ms. Hernandez and Ms. Varon were sent to TicketNetwork's Connecticut headquarters, Connecticut registered agent, and Delaware registered agent via certified mail (return receipt requested). These demand letters provided notice of TicketNetwork's violation of the CLRA and demanded that TicketNetwork correct the unlawful, unfair, false and/or deceptive practices alleged here. If TicketNetwork does not fully correct the problem for Plaintiffs and for each member of the Class within 30 days of receipt, Plaintiffs and the class will seek all monetary relief allowed under the CLRA.

80.    Plaintiffs' CLRA venue declarations are attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (By Plaintiffs and the Class)

81.    Plaintiffs incorporate each and every factual allegation set forth above.

82.    Plaintiffs bring this cause of action each individually and on behalf of the class.

83.    Defendants have violated California's Unfair Competition Law (UCL) by engaging in unfair and unlawful conduct.

**The Unlawful Prong.**

84.    Defendants engaged in unlawful conduct by violating the FAL, CLRA, and the FTC Act, as alleged above and throughout.

**The Deceptive Prong**

85.    As alleged in detail above, Defendants' representations about its ticket prices, and the hiding of their mandatory fees and actual prices, was false and misleading.

86. Defendants' representations were misleading to Plaintiffs and other reasonable consumers.

87. Plaintiffs relied upon Defendants' misleading representations and omissions, as detailed above.

**The Unfair Prong.**

88. Defendants' conduct is unfair because the harm to the consumer greatly outweighs the public utility of Defendants' conduct. There is no public utility to advertising lower-than-actual ticket prices. There is no public utility to using junk fees. Both of these practices mislead consumers on price, and prevent comparison shopping and competition. This injury was not outweighed by any countervailing benefits to consumers or competition. Hidden and late-disclosed fees only injure healthy competition and harm consumers. And companies could easily disclose any such fees upfront.

89. Defendants violated established public policy by violating the FTC Act and the UCL, as alleged below and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the FTC Act and of the California legislature, which, as alleged above, expressly declared that drip pricing is unfair and violates the UCL).

90. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

91. Plaintiffs and the class could not have reasonably avoided this injury. As alleged above, Defendants' fees and total price were not disclosed until after consumers selected their tickets. And, because the disclosure was designed to go unnoticed (in small, gray font, buried in the fine print), reasonable consumers did not see the disclosure.

92. Defendants' use of hidden fees was a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

93. Plaintiffs and the class were injured as a direct and proximate result of Defendants' conduct because (a) they paid an illegal fee, (b) they would not have purchased the tickets if they had known the truth, and/or (c) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

**Fourth Cause of Action:**

**Quasi-Contract**

**(By Plaintiffs and the Class)**

94.    Plaintiffs incorporate each and every factual allegation set forth above.

95.    Plaintiffs bring this cause of action each individually and on behalf of the class.

96.    As alleged in detail above, Defendants' false and misleading advertising caused Plaintiffs and the class to purchase tickets on www.eventicketscenter.com and to pay a price premium for those tickets.

97.    Defendants' unlawful and unfair "convenience fees" caused Plaintiffs and the class to overpay for the tickets.

98.    In this way, Defendants received a direct and unjust benefit, at Plaintiffs and the class's expense.

99.    Plaintiffs and the class seek restitution.

**VI.    Demand for Jury Trial.**

100.    Plaintiffs demand the right to a jury trial on all claims so triable.

**VII.    Prayer for Relief.**

101.    Plaintiffs seek the following relief for themselves and the class:

• An order certifying the asserted claims, or issues raised, as a class action;

• A judgment in favor of Plaintiffs and the proposed class;

• Damages, and statutory damages, where applicable;

• Restitution;

• Rescission;

• Disgorgement, and other just equitable relief;

• Pre- and post-judgment interest;

• An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

• Reasonable attorneys' fees and costs, as allowed by law;

• Any additional relief that the Court deems reasonable and just.

Date: June 5, 2025                    Respectfully submitted,

                                      By: */s/ Martin Brenner*

                                      Christin Cho (Cal. Bar No. 238173)
                                      christin@dovel.com
                                      Simon Franzini (Cal. Bar No. 287631)
                                      simon@dovel.com
                                      Martin Brenner (Cal. Bar No. 333540)
                                      martin@dovel.com
                                      DOVEL & LUNER, LLP
                                      201 Santa Monica Blvd., Suite 600
                                      Santa Monica, California 90401
                                      Telephone: (310) 656-7066
                                      Facsimile: (310) 656-7069

                                      *Attorneys for Plaintiffs*