Paul W. Sweeney, Jr. (SBN 112511)
Paul.Sweeney@klgates.com
Kevin S. Asfour (SBN 228993)
Kevin.Asfour@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001

Attorneys for Defendants
TICKETNETWORK, INC.
and EVENT TICKETS CENTER, INC.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| KRISTINA HERNANDEZ and JULIE VARON, each individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVENT TICKETS CENTER, INC., and TICKETNETWORK, INC.,<br><br>Defendants. | Case No. 2:24-CV-01983-DAD-AC<br><br>**DEFENDANT TICKETNETWORK, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 18, 2025<br>Time:     1:30 PM<br>Judge:    Hon. Dale A. Drozd<br>Courtroom:  4<br><br>[*Filed concurrently with Declaration of Eric Vikmanis; Declaration of Doug Kruse; [Proposed] Order*]<br><br>Complaint Filed:    July 19, 2024<br>Second Amended<br>Complaint Filed:    June 5, 2025<br>Trial Date:    November 24, 2026 |

## DEFENDANT TN's MOTION TO COMPEL ARBITRATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** on **Monday**, **August 18, 2025** at **1:30 p.m.**, or as soon thereafter as this matter may be heard by the Honorable Dale A. Drozd, in Courtroom 4 of the above-entitled court located at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, Defendant TicketNetwork, Inc. ("TN"), by and through its counsel of record, will and hereby does move this Court for the following:

1.      An order compelling plaintiffs Kristina Hernandez ("Hernandez") and Julie Varon ("Varon") (together, the "Plaintiffs") to submit their claims to binding individual arbitration in accordance with the arbitration agreement that governs their claims.

2.      An order staying this action after Plaintiffs are compelled to individual arbitrations or, in the alternative, dismissing this action in favor of arbitration.

TN makes this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and Federal Rule of Civil Procedure 12(b)(1) on the grounds that each Plaintiff and Defendant Event Tickets Center, Inc. ("ETC") entered into a valid and enforceable arbitration agreement that requires each Plaintiff to resolve their putative claims in binding individual arbitrations. TN has standing to compel plaintiffs to arbitration through equitable estoppel and as a third-party beneficiary of the agreement between each Plaintiff and ETC.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Doug Kruse and the exhibits thereto, the Declaration of Eric Vikmanis and the exhibits thereto, all papers and pleadings on file or deemed to be on file herein, and any other such papers, pleadings, evidence, or argument as may be presented before or at the hearing on this Motion.

On June 13, counsel for both parties exchanged emails scheduling a meet and confer regarding TN's contemplated motion as required by this Court's Standing Order. Counsel for both sides participated in a telephone conference on June 19, wherein they discussed TN's contemplated motion, the factual and legal grounds for same, and the

---

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

parties' respective positions on these issues.  The parties were unable to reach agreement on the issues, and thus TN now brings the instant Motion.

Dated: July 11, 2025                    **K&L GATES LLP**


By: */s/ Jacob R. Winningham*
    Jacob R. Winningham
    Paul W. Sweeney, Jr.
    Kevin S. Asfour

Attorneys for Defendants
 TICKETNETWORK, INC.
 and EVENT TICKETS CENTER, INC.

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

I.     Introduction ..................................................................................................... 1

II.    Factual Background and Procedural History ............................................ 2

III.   Legal Standard ............................................................................................... 5

       A.    General Legal Standards Governing a Defendant's Right to Compel
             Arbitration ............................................................................................. 5

       B.    General Legal Standards Governing a Non-Signatory's Right to
             Compel Arbitration Under an Arbitration Agreement ............................ 7

IV.    Argument ......................................................................................................... 8

       A.    TN has Standing to Bring this Motion. ..................................................... 8

             (i)    TN has standing to bring this motion under an equitable
                    estoppel theory. ............................................................................. 8

             (ii)   TN has standing to bring this motion as a third-party
                    beneficiary of the contract between ETC and each Plaintiff. ........ 11

       B.    Each Plaintiff Agreed to the Terms and Policies, which Contain a
             Valid Agreement to Arbitrate .................................................................. 13

       C.    The Valid Arbitration Agreement Encompasses Each of Plaintiffs'
             Claims ....................................................................................................... 16

       D.    Arbitration Should Proceed on an Individual Basis. ............................... 18

       E.    The Court Should Stay or Dismiss This Action. ...................................... 18

V.     Conclusion ..................................................................................................... 19

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................6

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)..............................................................7, 8

*Bentley v. Control Grp. Media Co., Inc.*,
  Case No.: 19-CV-2437-DMS-RBB, 2020 WL 3639660 (S.D. Cal. July
  6, 2020) ...........................................................................8, 9, 10

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ..............................................14, 16

*Cancer Ctr. Assocs. for Research and Excellence, Inc. v. Philadelphia Ins.
  Cos.*,
  No. 1:15-CV-00084 LJO MJS, 2015 WL 1766938 (E.D. Cal. Apr. 17,
  2015)................................................................................6, 19

*Capps v. JPMorgan Chase Bank, N.A.*,
  No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990 (E.D. Cal. Apr. 21,
  2023)..............................................................................15, 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .......................................6, 17, 18

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985)................................................................17

*DeVries v. Experian Info. Sols., Inc.*,
  No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ............15

*Dog Training Elite Franchising LLC v. Unbound Ventures LLC*,
  No. CV-24-01861-PHX-SMM, 2025 WL 918358 (D. Ariz. Mar. 26,
  2025) ...............................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)................................................................13

*Fox v. Experian Info. Sols., Inc.*,
   718 F. Supp. 3d 1231 (E.D. Cal. 2024) ...................................................19

*Fteja v. Facebook, Inc.*,
   841 F.Supp.2d 829 (S.D.N.Y. 2012) .....................................................15

*Goonewardene v. ADP, LLC*,
   6 Cal.5th 817 (2019)......................................................................11, 13

*GT Secs., Inc. v. Klastech GmbH*,
   Case No. C-13-03090 JCS, 2014 WL 2928013 (N.D. Cal. June 27,
   2014) .........................................................................................................7

*JSM Tuscany, LLC v. Superior Court*,
   193 Cal.App.4th 1222 (2011) ...................................................................8

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ..............................................................6, 13

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ..............................................................7, 8

*Last v. M-I, L.L.C.*,
   No. 1:20-cv-01205-NODJ-EPG, 2024 WL 551948 (E.D. Cal. Feb. 12,
   2024) .............................................................................................7, 8, 9, 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985)..................................................................................6

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ..................................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)......................................................................................6

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ................................................................18

*Ngo v. BMW of N. Am., LLC*,
   23 F.4th 942 (9th Cir. 2022) .....................................................................8

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ....................................................13, 14, 15

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ...................................................................15

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ...................................................................13

*Rent-A-Center W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...........................................................................17, 18

*Rosenthal v. Great W. Fin. Secs. Corp.*,
    14 Cal.4th 394 (1996) ...............................................................................6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................12

*Torbit, Inc. v. Datanyze, Inc.*,
    No. 5:12-CV-05889-EJD, 2013 WL 572613 .............................................8

*Wayans v. BMW of N. Am., LLC*,
    Case No. CV 19-7319-MWF (JEMx), 2020 WL 2046392 (C.D. Cal.
    Jan. 7, 2020), *Pls.' Mot. to vacate J. and Order denied by Wayans v.
    BMW of N. Am., LLC*, Case No. CV 19-07319-MWF (JEM), 2022 WL
    3573144 (C.D. Cal. June 14, 2022) .............................................7, 11, 12

*Yoshida v. Vista Energy Mktg. LP*,
    No. 2:20-cv-01944-TLN-CKD, 2022 WL 88505 (E.D. Cal. Jan. 7,
    2022) ........................................................................................................18

*Zeto v. BMW of N. Am., LLC*,
    Case No.: 20-cv-1380-GPC-KSC, 2020 WL 6708061 (S.D. Cal. Nov.
    16, 2020) ..............................................................................................8, 11

**Statutes**

9 U.S.C. §§ 1, *et seq.* ..........................................................................................1

9 U.S.C. § 2 ........................................................................................................5

9 U.S.C. § 3 ...................................................................................................2, 19

9 U.S.C. § 4 ........................................................................................................6

Federal Rules of Civil Procedure Rule 12(b)(1) ...............................2, 6, 7, 19

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.** <u>**INTRODUCTION**</u>

3       Plaintiffs Kristina Hernandez ("Hernandez") and Julie Varon ("Varon") (together,

4  the "Plaintiffs") have filed a Second Amended Complaint ("SAC"), which names for the

5  first time TicketNetwork, Inc. ("TN") as a Defendant.  The SAC asserts claims on behalf

6  of a proposed class of all persons who, while in the state of California and within the

7  applicable statute of limitations and before March 1, 2024, purchased tickets from the

8  website of Defendant Event Tickets Center, Inc.  ("ETC").  (DE 45.)  Those claims are

9  identical to the claims Plaintiffs makes against ETC in the SAC, presumably because of

10  the relationship between the two entities.    However, Plaintiffs—and any other

11  individuals who purchased tickets on ETC's website www.eventicketscenter.com (the

12  "Website")—are each bound by an arbitration agreement (the "Arbitration Agreement")

13  that requires them to arbitrate individually any claims or disputes arising out of a

14  purchase made on the Website.  Specifically, when Plaintiffs used the Website and

15  purchased tickets thereon, as a condition thereof, Plaintiffs agreed to arbitrate "any . . .

16  claim, dispute, or other action, arising out of or relating to the use of [the Website or]

17  any order placed on [the Website]."  (Vikmanis Decl., ¶¶ 3-4, 7, Ex. A); (Kruse Decl., ¶

18  6.)  Plaintiffs further agreed to pursue such claims only on an individual (or, non-class)

19  basis: "[a]ny arbitration or trial of any claim will take place on an individual basis

20  without resort to any form of class or representative action."  (Vikmanis Decl., ¶ 9.)

21       As shown below, the Arbitration Agreement is valid and enforceable under the

22  Federal Arbitration Act (the "FAA," 9 U.S.C. §§ 1, *et seq*.).  Under this Circuit's

23  precedent, Defendant TN also has standing to compel Plaintiffs to individual arbitration

24  through equitable estoppel and as a third-party beneficiary of the contract between each

25  individual Plaintiff and ETC.  Plaintiffs nevertheless refuse to arbitrate their claims, all

26  of which arise out of the distinct orders each Plaintiff placed on the Website.  Therefore,

27  TN respectfully moves this court for an Order compelling this matter to arbitration on

28  an individual basis for each of the Plaintiffs before the American Arbitration Association

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

(the "AAA"), as required by the written agreement between each Plaintiff and ETC, and staying this action, pursuant to 9 U.S.C. § 3, pending the completion of arbitration or, in the alternative, dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 19, 2022, Ms. Hernandez purchased two concert tickets through the Website.  (Kruse Decl., ¶ 3); (DE 45 at ¶ 38.)  On July 4, 2023, Ms. Varon purchased two concert tickets through the Website.  (Kruse Decl., ¶ 4); (DE 45 at ¶ 42.)

To complete those purchases, each of Plaintiffs had to navigate through the Website, selecting the desired event, seat location, and ticket quantity, and then pay for the tickets.  (Kruse Decl., ¶¶ 3-6.)  At the time of each of Plaintiffs' purchases, after a user (such as Plaintiffs) selected her desired event, seat location and ticket quantity, she proceeded to a "checkout" page. (*Id.*)  At the top of the checkout page was a box wherein the user was required to enter her email address to proceed. (*Id.* at ¶ 5.)  Directly below the email address box was a sentence stating, "Yes, I want EventTicketsCenter.com to send me event updates and ticket discounts.  Privacy Policy." (*Id.*)  The phrase "Privacy Policy" was offset in blue text against a white background. (*Id.*)  If the phrase "Privacy Policy" was clicked the user would automatically be linked to ETC's privacy policy. (*Id.*)

To complete her purchase, the user had to click a large blue button that read in ALL CAPS: "PLACE ORDER." (*Id.* at ¶ 6.)  Directly above the "Place Order" button was a sentence (the "Notice") stating "By clicking 'Place Order,' **you are agreeing to EventTicketsCenter.com's terms & policies**.  All sales are final." (*Id.*) (emphasis added).  The phrase "terms & policies" in the Notice was offset in blue text against a white background. If a user clicked on the phrase "terms & policies" the user would automatically be linked to ETC's privacy policy. (*Id.*)  The Notice, the "terms & policies" hyperlink, and the "PLACE ORDER" button all appeared on a single webpage.

2

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

(*Id.* at ¶¶ 6-7.)[1]  Thus, a user could (i) choose not to read the privacy policy and move forward to place their order, which meant they accepted the terms and policies *without* reviewing the terms and policies, or (ii) the user could click the phrase "terms & policies" and review the privacy policy *before* placing their order.  (*Id.*)  Either way, as set forth above, the terms and policies were "agreed to" by the user when they placed an order for a ticket(s).

The "terms & policies" button was a hyperlink to ETC's privacy policy.  The privacy policy contains, among other provisions, a binding arbitration agreement and class action waiver.  (Vikmanis Decl., ¶¶ 3, 7-8, Ex. A.)  Pursuant to this Agreement, users (including the Plaintiffs) agreed to resolve any "claim [or] dispute … arising out of or relating to … any order placed on [the site] … through binding arbitration administered by the American Arbitration Association."  (*Id.* at ¶¶ 7-8.)    The same provision went on to state, in ALL CAPS, that:

> BY AGREEING TO ARBITRATE, USER IS GIVING UP THE RIGHT TO LITIGATE (OR PARTICIPATE IN AS A PARTY OR CLASS MEMBER) ANY AND ALL CLAIMS IN COURT BEFORE A JUDGE OR JURY.  INSTEAD, A NEUTRAL ARBITRATOR WILL RESOLVE ALL CLAIMS.  IF USER DOES NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, USER MUST NOTIFY SITE IN WRITING WITHIN 30 DAYS OF THE DATE THAT USER PLACES AN ORDER ON SITE.

(*Id.* at ¶ 7.)  Plaintiffs did not provide written notification to ETC within 30 days of their respective purchases that they did not wish to be bound by the arbitration provision. (Kruse Decl., ¶ 8.)

Plaintiffs further agreed that they would arbitrate their claims against ETC on an individual basis:

> Any arbitration or trial of any claim will take place on an individual basis without resort to any form of class or representative action ('CLASS ACTION WAIVER')

---

[1] That same webpage also listed the full cost, including all fees, that would be charged if an order was placed.

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

… If the CLASS ACTION WAIVER is limited, voided or found unenforceable, then the parties' agreement to arbitrate shall be null and void with respect to such proceeding … USER AND SITE ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED.

(Vikmanis Decl., ¶¶ 9-10.)

Plaintiffs completed their respective purchases by clicking the "PLACE ORDER" button, thereby accepting and agreeing to ETC's terms and policies.  Any user who completed a purchase on the website—including Plaintiffs—could not successfully purchase event tickets without clicking the "PLACE ORDER" button directly below the Notice containing the blue-highlighted "terms & policies" phrase.  (Kruse Decl., ¶ 6); (Vikmanis Decl., ¶ 13.)

The privacy policy also contains language stating that:

The listings of ticket inventory on SITE **are provided by a third party** ("PROVIDER").  Neither SITE nor PROVIDER is involved in the actual transaction between buyers and sellers. While SITE and PROVIDER may help facilitate the resolution of disputes, neither SITE nor PROVIDER has control over the content of the tickets listed on SITE, the truth or accuracy of such listings, the ability of the FULFILLER to sell tickets, or that USER and FULFILLER will actually complete a transaction.

(Vikmanis Decl., ¶ 11.)

This language describes the relationship between ETC and TN (the third party "provider" identified in the above language).  ETC acts as a private label affiliate marketer and provides marketing services to TN.  (*Id.* at ¶ 14.)  In return, TN furnishes the platform for ETC's website.  This platform includes a widget created and controlled by TN.  (*Id.*)  TN earns money on each ticket sold by ETC in return for TN's involvement in facilitating the transaction.  (*Id.* at ¶ 15.)

Plaintiff Hernandez filed her class action complaint against ETC on July 19, 2024.  (DE 1.)  On October 11, 2024, ETC filed a motion to dismiss this case based on the "first-to-file" rule, alleging substantial similarities between this matter and another

proceeding currently ongoing in the Northern District of California.  (DE 10-1.) Plaintiffs filed their opposition to the motion to dismiss on November 8, 2024.  (DE 13.) ETC filed their reply to Plaintiffs' opposition on November 25, 2024.  (DE 18.) Plaintiffs filed a motion to amend their complaint on January 31, 2025, which ETC opposed on February 14, 2025.  Plaintiffs filed their reply to ETC's opposition to the motion to amend on February 19, 2025. (DE 19, 20, 21.)  On March 25, 2025, this Court entered orders granting ETC's substitution of attorney.  (DE 29, 30, 31.)  On April 9, 2025 the Court issued an order denying ETC's motion to dismiss based on the "first-to-file" rule and granting Plaintiffs' motion to amend their complaint.  (DE 35.)  Plaintiffs filed their FAC the same day, naming Ms. Varon as an additional plaintiff.  (DE 36.)

The only discovery demands that have been served in the case are those that Ms. Hernandez has served on ETC.  ETC objected to the discovery on, among other grounds, that the motion to dismiss was pending.  Nevertheless, ETC was subsequently compelled to respond to the discovery consistent with the Magistrate Judge's order issued on March 31, 2025.  (DE 32.)  Plaintiffs filed an unopposed Motion for Leave to File a Second Amended Complaint on May 27, 2025—seeking to join TN as a new defendant—which the Court granted on June 4, 2025.  (DE 42, 44.)  The Plaintiffs shortly thereafter filed their SAC on June 5, 2025, naming TN as an additional defendant.  (DE 45).  As TN was not a party to this action prior to the filing of the SAC, TN has not been involved in any substantive motion practice or discovery in this case to date.  TN responded to the SAC by way of this motion.

## III.  LEGAL STANDARD

### A.    General Legal Standards Governing a Defendant's Right to Compel Arbitration

The FAA provides that a written arbitration agreement in a "contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects both "a liberal federal policy favoring arbitration,

5
**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 631 (1985) (identifying an "emphatic federal policy in favor of arbitral dispute resolution" and stating that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Under the FAA, parties are granted the right to obtain a court order directing that arbitration proceed as agreed between the parties. 9 U.S.C. § 4. Due to the emphatic federal policy favoring arbitration, a court's role in determining whether to compel arbitration is limited to determining the issues of "(1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal.4th 394, 413 (1996)). As demonstrated in its separate motion, filed contemporaneously with his motion, ETC (one of the parties seeking to compel arbitration) can show that each Plaintiff entered into a valid arbitration agreement, and that each Plaintiff's claims are clearly covered by the terms of the arbitration agreement.

Moreover, courts in this Circuit have held that a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is an appropriate procedural vehicle where the plaintiff's claims are subject to an arbitration agreement, and thus ETC's separate motion moved to dismiss this action in favor of arbitration on that alternative ground. TN brings the same arguments in the present motion. *See Cancer Ctr. Assocs. for Research and Excellence, Inc. v. Philadelphia Ins. Cos.*, No. 1:15-CV-00084 LJO MJS, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) ("Although section four of the [FAA] provides for the filing of a motion to compel

arbitration, courts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce an arbitration provision") (citations and internal quotations omitted); *GT Secs., Inc. v. Klastech GmbH*, Case No. C-13-03090 JCS, 2014 WL 2928013, at *2, n.4 (N.D. Cal. June 27, 2014) ("In the Ninth Circuit, motions to dismiss based on arbitration fall under Rule 12(b)(1) of the Federal Rules of Civil Procedure"); *Dog Training Elite Franchising LLC v. Unbound Ventures LLC*, No. CV-24-01861-PHX-SMM, 2025 WL 918358, at *2 (D. Ariz. Mar. 26, 2025) (listing cases from this Circuit and other Circuits granting or hearing motions to compel arbitration brought under Rule 12(b), including Rule 12(b)(1)).

**B.    General Legal Standards Governing a Non-Signatory's Right to Compel Arbitration Under an Arbitration Agreement**

The Supreme Court of the United States has held that a nonsignatory to an arbitration agreement "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Courts in this Circuit have held that California law allows nonsignatories to compel arbitration under equitable estoppel and third-party beneficiary theories. *See Wayans v. BMW of N. Am., LLC*, Case No. CV 19-7319-MWF (JEMx), 2020 WL 2046392, at *3 (C.D. Cal. Jan. 7, 2020), *Pls.' Mot. to vacate J. and Order denied by Wayans v. BMW of N. Am., LLC*, Case No. CV 19-07319-MWF (JEM), 2022 WL 3573144 (C.D. Cal. June 14, 2022) (granting nonsignatory defendant's motion to compel arbitration as a third-party beneficiary); *Last v. M-I, L.L.C.*, No. 1:20-cv-01205-NODJ-EPG, 2024 WL 551948, at *12 (E.D. Cal. Feb. 12, 2024) (granting a nonsignatory defendant's motion to compel arbitration where equitable estoppel permitted the defendant "to enforce the arbitration clause as a non-signatory").

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

IV.    **ARGUMENT**

    A.    **TN has Standing to Bring this Motion.**

        (i)    <u>TN has standing to bring this motion under an equitable estoppel theory.</u>

A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen*, 556 U.S. at 632). California law allows non-signatories to an arbitration agreement to compel arbitration under various theories. *See, e.g., Zeto v. BMW of N. Am., LLC*, Case No.: 20-cv-1380-GPC-KSC, 2020 WL 6708061, at *9 (S.D. Cal. Nov. 16, 2020) (citing *JSM Tuscany, LLC v. Superior Court*, 193 Cal.App.4th 1222, 1237 (2011)).

One of the theories under which a non-signatory can compel arbitration is equitable estoppel. "California law permits non-signatories to invoke arbitration agreements under the doctrine of equitable estoppel only in limited circumstances." *Last*, 2024 WL 551948 at *11 (citing *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022)) (internal quotation marks and further citation omitted). One of those circumstances is where "a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are ***intimately founded in and intertwined with the underlying contract***." *Last*, 2024 WL 551948, at *11 (citing *Kramer*, 705 F.3d at 1128) (emphasis added) (further citation omitted); *see also Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 ("In order for a non-signatory to have standing to compel arbitration under this theory, the claims brought against it by the signatory must be 'intertwined with the contract providing for arbitration' or 'arise out of' or 'relate directly to' the contract containing the arbitration provision") (citation omitted). The policy consideration undergirding equitable estoppel doctrine is that "[i]t is unfair for a party to rely on a contract when it works to its advantage [] and repudiate it when it works to its disadvantage." *Bentley v. Control Grp. Media Co., Inc.*, Case No.: 19-CV-2437-DMS-RBB, 2020 WL 3639660, at *3 (S.D. Cal.

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

July 6, 2020) (citation omitted); *see also Last*, 2024 WL 551948, at *11 ("The fundamental point [of equitable estoppel] is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved") (citation omitted).

*Bentley* is illustrative here.  In that case, the Southern District of California held that equitable estoppel required that "Plaintiffs be estopped from refusing to comply with the 'Terms of Use' provisions, including the arbitration agreement" where the Plaintiffs' complaint "presume[d] the existence of the underlying contract [containing the arbitration provision." *Bentley*, 2020 WL 3639660, at *3.  Because the *Bentley* complaint detailed the process by which groups acting on behalf of the Plaintiffs "subscribed to Defendants' websites, agreed to the 'Terms of Use,' paid Defendants' fee, [and] accessed [Defendants' services]," the court held that "Plaintiffs' claims presume the existence of the underlying contract."  *Id.* (internal quotation marks and citations omitted).  The court granted Defendants' motion to compel arbitration and held that equitable estoppel applied to prevent Plaintiffs from "avoid[ing] the restrictive obligations of the contract." *Id.*

Much like the claims and complaint in *Bentley*, Plaintiffs' claims against TN in the present matter "presume the existence" of the underlying contract between each individual Plaintiff and ETC.  As with the *Bentley* complaint, Plaintiffs' SAC includes a step-by-step description of the process by which they selected and purchased tickets, thereby agreeing to the ETC's terms and policies.  *Compare* DE 45 at ¶¶ 27-33 with *Bentley*, 2020 WL 3639660, at *3 (describing how the complaint in that matter detailed the process by which groups acting on behalf of the Plaintiffs "subscribed to Defendants' websites, agreed to the 'Terms of Use,' paid Defendants' fee, [and] accessed [Defendants' services]"); *see also* DE 45 at ¶ 6 (stating that "Plaintiffs each purchased tickets from the Event Tickets Center website…").  By describing the process of purchasing tickets from ETC, Plaintiffs' SAC "arises out of, relates to, and exploits the benefits of [ETC's services]." *Bentley*, 2020 WL 3639660, at *4.  Plaintiffs' use of those

9

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

services, as described in the SAC, is subject to the terms and policies to which each Plaintiff individually agreed.[2]    Therefore, each claim brought by each Plaintiff "presume[s] the existence of the underlying contract"—the terms and policies—and "Plaintiffs, therefore, cannot avoid the restrictive obligations of the contract." *Bentley*, 2020 WL 3639660, at *3; *see also Last*, 2024 WL 551948, at *12 (holding that a non-signatory could enforce an arbitration clause found in the employment contract between plaintiff and a signatory where "plaintiff's claims are intimately founded in and intertwined with" the employment agreement because each of plaintiff's claims "are rooted in [the] employment relationship" arising out of that contract).

Plaintiffs cannot, on one hand, rely on the terms and policies underlying their claims in drafting their complaint while, on the other hand, attempting to avoid the arbitration provision included in those terms and policies.  "Plaintiffs must therefore abide by the arbitration agreement included in the [terms and policies] in resolving their dispute." *Bentley*, 2020 WL 3639660, at *4 (citation omitted).[3]

---

[2] Those terms and policies contain an Arbitration Agreement which plainly states that Plaintiffs agreed to arbitrate "any . . . claim, dispute, or other action, arising out of or relating to the use of [the Website or] any order placed on [the Website]."  (Vikmanis Decl., ¶¶ 3-4, 7, Ex. A); (Kruse Decl., ¶ 6.)  This arbitration agreement clearly encompasses the claims alleged in the SAC, which by their own terms arise out of and rely upon Plaintiffs' purchases made via the website.  (DE 45 at ¶¶ 57-63, 67-75, 85-93, and 96-98.)  Moreover, this arbitration agreement is more specific than the one found in *Bentley*. *See Bentley*, 2020 WL 3639660, at *1 (noting that the arbitration agreement stated, in relevant part, that the parties agreed to arbitrate "ALL CLAIMS, DISPUTES OR CONTROVERSIES … RELATING TO … YOUR USE OF OUR SERVICES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS…").

[3] In addition to the policy rationale described above, compelling each Plaintiff to individual arbitration against *each* Defendant would also promote judicial economy and avoid inconsistent outcomes.  Each Plaintiff has brought identical claims against both Defendants.  Compelling the Plaintiffs to individual arbitration against only one of the Defendants, while allowing identical claims to proceed against the other Defendant in court, runs the risk of straining court resources and promoting inconsistent outcomes.

10

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

(ii)    TN has standing to bring this motion as a third-party beneficiary of the contract between ETC and each Plaintiff.

A non-signatory can also compel arbitration as a third-party beneficiary to the arbitration agreement. *Zeto*, 2020 WL 6708061, at *9 (citations omitted). To compel arbitration, the third-party beneficiary must be "more than incidentally benefitted by the contract." *Zeto*, 2020 WL 6708061, at *9 (citation omitted). However, "the third-party beneficiary's name does not need to appear in the agreement." *Id.* (citation omitted). "The court assess whether the third party is an intended beneficiary 'gathered from reading the contract as a whole in light of the circumstances under which it was entered' … though the intent of the parties 'is to be ascertained from the writing alone, if possible.'" *Id.* (citations omitted).

The California Supreme Court has held that a third party can assert rights under a contract as a third-party beneficiary if (1) "the third party would in fact benefit from the contract;" (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party;" and (3) "permitting [the] third party to bring its [] action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 829-30 (2019); *see also Wayans*, 2020 WL 2046392, at *3 (applying the *Goonewardene* test to allow a nonsignatory to compel arbitration as a third-party beneficiary). TN is a third-party beneficiary of the agreement between Plaintiffs and ETC, and therefore can move to compel arbitration under the above-described precedent.

With regards to the first *Goonewardene* element, it is readily apparent that TN would "in fact benefit from the contract" between Plaintiffs and ETC. The terms and policies identify a "Provider" (TN) as a "third party" providing the listings of tickets sold on the website and go on to state that "any…claim [or] dispute … arising out of or relating to the use of SITE [or] any order placed on site" is subject to the arbitration agreement. (Vikmanis Decl., ¶¶ 7, 11.) The "benefits" of arbitration have been identified by the Supreme Court of the United States as including "lower costs, greater

11

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). As a third-party beneficiary contemplated by the terms and policies, TN would benefit from the arbitration agreement therein.

The second and third *Goonewardene* elements also point in TN's favor. With regards to the second *Goonewardene* element, all parties to the terms and policies understood that the ticket purchaser (each Plaintiff), the site owner (ETC) and the "Provider" (TN) would benefit from the ticket purchase contract. The business purpose of the transaction was to provide tickets to plaintiffs and revenues to each Defendant, including TN. TN receives revenue from the agreement and is also mentioned as a third party "PROVIDER" in the terms and policies. Because TN receives revenue from and is mentioned in the terms and policies, the second *Goonewardene* element is met. *Wayans* is also illustrative here. In that case, the court granted a nonsignatory's motion to compel arbitration, holding that the nonsignatory was a third-party beneficiary of a contract between the plaintiff and a non-party car dealer. *Wayans*, 2020 WL 2046392, at *1. The contract in question contained an arbitration provision. *Id.* The contract also implicitly mentioned the nonsignatory defendant (a car manufacturer) in a separate provision stating: "16. WARRANTIES. The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the *standard manufacturer's* new vehicle warranty." *Id.* The *Wayans* court held that, based on the above "Warranties clause," allowing the nonsignatory defendant to compel arbitration would "be consistent with the objectives of the contract and the reasonable expectations of the contracting parties since the Warranties clause states that the manufacturer—Defendant in this case—would provide a new vehicle warranty." *Id.* at *3.

Much like the nonsignatory defendant in *Wayans*, TN was implicitly mentioned in a provision of the terms and policies (via the "PROVIDER" language). That provision identifies TN as a third party providing listings of ticket inventory, while the arbitration agreement provides for individual arbitration of claims arising out of any "order placed"

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

through the use of those listings.  Therefore, the terms and policies—and thus, the parties to the terms and policies—contemplated conferring the benefit of arbitration to TN as the third-party "PROVIDER" mentioned therein.  As a result, allowing TN to compel arbitration as a third-party beneficiary would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties."  *Goonewardene*, 6 Cal.5th at 829-30.

**B.    Each Plaintiff Agreed to the Terms and Policies, which Contain a Valid Agreement to Arbitrate.**

Each Plaintiff is bound by the "terms and policies" on the Website (including the Privacy Policy), including the Arbitration Agreement that requires them to individually arbitrate any claims against ETC.  That the agreement between Plaintiffs and ETC was entirely contained within an internet transaction does not change the general standard described above.  *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("While new commerce on the Internet has exposed courts to new situations, it has not fundamentally changed the principles of contract") (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)).  Therefore, in deciding whether the parties to an internet-based (or any) contract have agreed to arbitrate, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"  *Nguyen*, 673 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  "[U]nder California law, mutual assent is a required element of contract formation."  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction."  *Id.* (internal citations and quotation marks omitted).

In this Circuit, a website owner seeking to prove an enforceable contract must show that:

(1) [T]he website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as

clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (citation omitted). Notice of the terms is conspicuous where it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* A "reasonably prudent user [has] inquiry notice" depending on the "conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen*, 673 F.3d at 1177. For the "unambiguous [manifestation]" of assent element from *Berman*, "a user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions." *Berman*, 30 F.4th at 857. The notice "must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* (recommending that a defective notice "could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions'") (citation omitted).

Courts in this Circuit have routinely enforced internet arbitration agreements indistinguishable from the one at issue in the present matter, where the "user is required to affirmatively acknowledge the agreement before proceeding with the use of the website." *Nguyen*, 673 F.3d at 1176. Here, Plaintiffs could not have completed their purchases without clicking the "PLACE ORDER" button. (Kruse Decl., ¶ 6.) Directly above the "PLACE ORDER" button is a Notice of the terms and policies, which hyperlinks the terms and policies in a contrasting blue text placed on a white background. The same Notice informs the user (such as Plaintiffs) that "By clicking 'Place Order', you are agreeing to EventTicketsCenter.com's terms and policies." (*Id.*) Each Plaintiff agreed to the terms and policies (which included the Privacy Policy and the arbitration agreement therein) because they clicked the "PLACE ORDER" button with clear notice of the terms and policies and did so after being informed that the act of

14

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

clicking the button would indicate their agreement to be bound by those terms. Therefore, the Plaintiffs "affirmatively [acknowledged] the agreement before proceeding with" the purchase. *Nguyen*, 763 F.3d at 1176-77 (citing *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 835, 838-40 (S.D.N.Y. 2012) (holding that the plaintiff assented to the defendant's terms of use where the relevant hyperlinked disclosure was placed "immediately below" a "Sign Up" button and stated "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service")). Numerous courts (including this Court) within this Circuit hearing matters involving similar facts have determined that users were bound by the relevant terms of use in granting a party's motion to compel arbitration. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (affirming the trial court's finding of constructive notice where the notice stated "By continuing past this page and clicking 'Place Order', you agree to our Terms of Use," the "Terms of Use" hyperlink was distinguished from the surrounding text in bright blue font, and the notice was "conspicuously displayed directly above … the action button"); *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990, at *4-5 (E.D. Cal. Apr. 21, 2023) (holding that a website's notice "provided sufficient notice of the Terms of Use Agreement, and therefore [there] was a binding arbitration agreement" between the parties where the notice stated "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement," the notice was placed directly and conspicuously above the "Create Your Account" button, the phrase "Terms of Use Agreement" was hyperlinked in bright blue font, and clicking the hyperlinked phrase would have presented a user with the full text of the agreement); *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5-6 (N.D. Cal. Feb. 24, 2017) (granting defendant's motion to compel arbitration and finding constructive notice where the notice stated "Click 'Submit Secure Order' to accept the Terms and Conditions above, acknowledge receipt of our Privacy Notice and agree to its terms … and submit your secure order," the notice was displayed "directly above" the "Submit Secure Order" button, the "Terms and Conditions" and

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

"Privacy Notice" were both hyperlinks written in a blue font different from the rest of the text, and clicking the "Terms and Conditions" hyperlink would open an additional window containing the full text of the terms and conditions, including the arbitration provision); *cf. Berman*, 30 F.4th at 856-57 (finding a lack of constructive notice where the relevant notice was written in "a tiny gray front … barely legible to the naked eye" and the hyperlinks included therein were only underscored, not set apart through "the use of a contrasting font color (typically blue)…").

ETC's Notice explicitly disclosed to each Plaintiff that by clicking "PLACE ORDER," she agreed to the terms and policies hyperlinked in bright blue font. The Notice therefore provided Plaintiffs with "reasonably conspicuous" notice of the terms to which they would be bound upon clicking the button. *Berman*, 30 F.4th at 856-57. As soon as each Plaintiff manifested her assent to the terms by clicking the button, the terms and policies applicable to her ticket purchase became agreed to and enforceable. *Id.* at 857 ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement"). Therefore, Plaintiffs agreed to be bound by the Arbitration Agreement included in the terms and policies. As a result, a valid arbitration agreement exists between ETC and each Plaintiff. *See Capps*, 2023 WL 3030990, at *4-5 ("[T]he court finds that the website provided sufficient notice of the Terms of Use Agreement, and therefore that there was a binding arbitration agreement between plaintiffs and [defendant]").

C.    **The Valid Arbitration Agreement Encompasses Each of Plaintiffs' Claims.**

Each of Plaintiffs' claims is encompassed by the valid Arbitration Agreement contained in the Website's terms and policies. By its own language, the Arbitration Agreement covers:

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

1
2
3

> Any controversy, claim, dispute, or other action, arising out of or relating to the use of SITE, any order placed on SITE, or these policies including any dispute over the validity, enforceability or scope of this arbitration provision…

4
5
6
7

(Vikmanis Decl., ¶¶ 3, 7-8, Ex. A.)  Both Plaintiffs bring four claims in their SAC, all of which by their own terms plainly and expressly arise out of the ticket orders each Plaintiff placed on the Website.  (DE 45 at ¶¶ 57-63, 67-75, 85-93, and 96-98.)  Therefore, the Arbitration Agreement requires arbitration of Plaintiffs' claims.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Plaintiffs may argue that their claims do not fall within the scope of the Arbitration Agreement.  Any issue regarding the scope of the Arbitration Agreement is nevertheless to be decided by an arbitrator: "…any dispute over the validity, enforceability or scope of this arbitration provision … shall be resolved through binding arbitration." (Vikmanis Decl., ¶¶ 3, 7-8, Ex. A.)  Under Ninth Circuit precedent, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" including "whether their agreement covers a particular controversy." *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted).  The Ninth Circuit has followed *Rent-A-Center*'s holding on this issue.  *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that language in the operative arbitration agreement stating "if a dispute arises out of … the validity or application of any of the provisions of this section … the dispute shall be resolved exclusively by binding arbitration" properly delegated "to the arbitrators the authority to determine" the "'threshold issues concerning the arbitration agreement'") (quoting *Rent-A-Center W.*, 561 U.S. at 68-69).

26
27
28

In the event that this Court determines that it should decide the scope of the Arbitration Agreement itself, it should nevertheless hold that Plaintiffs agreed to arbitrate all of the claims brought in their FAC.  Plaintiffs agreed to arbitrate "any

controversy, claim, dispute, or other action" arising out of "any order placed on" ETC's Website. (Vikmanis Decl., ¶¶ 3, 7-8, Ex. A.) Each of Plaintiffs' claims arises out of their ticket purchases. (DE 45 at ¶¶ 57-63, 67-75, 85-93, and 96-98.) The Court's responsibility here is to decide "whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. Each one of Plaintiffs' claims is encompassed by the broad "any controversy, claim, dispute or other action" language of the terms and policies. Therefore, this Court should compel arbitration.

### D.    Arbitration Should Proceed on an Individual Basis.

The valid Arbitration Agreement contains a class action waiver provision: "Any arbitration or trial of any CLAIM will take place on an individual basis without resort to any form of class or representative action. ('CLASS ACTION WAIVER')." (Vikmanis Decl., ¶¶ 3, 9-10, Ex. A.) Class action waivers contained in arbitration provisions are enforceable in this Circuit. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2013) ("[T]he district court held that the class action waiver is not unconscionable, and therefore, the arbitration provision is enforceable. We agree") (internal quotation marks and citations omitted); *Yoshida v. Vista Energy Mktg. LP*, No. 2:20-cv-01944-TLN-CKD, 2022 WL 88505, at *7 (E.D. Cal. Jan. 7, 2022) (holding that a class action waiver contained within a "valid and enforceable" arbitration agreement was "therefore similarly valid and enforceable").

### E.    The Court Should Stay or Dismiss This Action.

Once a court compels arbitration between parties pursuant to a valid and enforceable arbitration agreement, the FAA requires a court to stay any action between the parties during the pendency of the arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement …

**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

9 U.S.C. § 3; *see also Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1243 (E.D. Cal. 2024) ("Accordingly, because the court has concluded that this action will be referred to arbitration, the court also finds that it must stay this action through the completion of arbitration pursuant to § 3 of the FAA").

Alternatively, the Court may dismiss this action in favor of arbitration, as "a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce an arbitration provision." *Cancer Ctr. Assocs.*, 2015 WL 1766938, at *2-7.

## V.    CONCLUSION

For the foregoing reasons, TN respectfully requests that the Court grant this Motion to Compel Arbitration and stay this action pending compliance with the arbitration agreement or, in the alternative, dismiss this action in favor of arbitration.

Dated: July 11, 2025                    Respectfully submitted,

**K&L GATES LLP**

By: */s/ Jacob R. Winningham*
    Jacob R. Winningham
    Paul W. Sweeney, Jr.
    Kevin S. Asfour

Attorneys for Defendants
  TICKETNETWORK, INC.
  and EVENT TICKETS CENTER, INC.

19
**DEFENDANT TN's MOTION TO COMPEL ARBITRATION**

# CERTIFICATE OF SERVICE

**Case No. 2:24-CV-01983-DAD-AC**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: K&L GATES LLP, 10100 Santa Monica Boulevard Eighth Floor, Los Angeles, CA  90067.

On JULY 11, 2025 I served the document(s) described as:
**DEFENDANT TICKETNETWORK, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ERIC VIKMANIS; DECLARATION OF DOUG KRUSE; [PROPOSED] ORDER**

Service of the above referenced document was provided to the parties as stated below:

| | |
|---|---|
| Christin Cho (Cal. Bar No. 238173)<br>christin@dovel.com<br>Simon Franzini (Cal. Bar No. 287631)<br>simon@dovel.com<br>Martin Brenner (Cal. Bar No. 333540)<br>martin@dovel.com<br>Gabriel Z. Doble (Cal. Bar No. 335335)<br>gabe@dovel.com<br>DOVEL & LUNER, LLP<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, CA 90401<br>Tel: (310) 656-7066<br>Facsimile: (310) 656-7069 | *Counsel for PLAINTIFFS*<br>KRISTINA HERNANDEZ<br>and JULIE VARON |

☑ **BY ECF**:  The undersigned certifies that the document listed above was filed this July 11, 2025. Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF). Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on JULY 11, 2025 at Los Angeles, California.

Jacob Winningham

*Jacob Winningham*
Signature

1
CERTIFICATE OF SERVICE