Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Z. Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTINA HERNANDEZ and JULIE VARON, individually and on behalf of all others similarly situated, | Case No. 2:24-CV-01983-DAD-AC |
| *Plaintiffs*, | **Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration** |
| v. | Case Assigned to Hon. Dale A. Drozd |
| EVENT TICKETS CENTER, INC., and TICKETNETWORK, INC., | |
| *Defendants*. | |

**Table of Contents**

I.    Introduction. ..................................................................................................... 1

II.   TicketNetwork has no right to compel arbitration under ETC's arbitration provision............. 1

    A.    Equitable estoppel does not apply because Plaintiffs' claims against TicketNetwork do not rely on the terms and policies on ETC's website............................................... 2

    B.    TicketNetwork is not a third-party beneficiary of ETC's arbitration provision. .......... 5

III.  TicketNetwork fails to establish mutual assent to ETC's arbitration provision. ..................... 8

    A.    The context of the transactions—one-and-done ticket purchases—does not create expectations of ongoing contractual terms..................................................... 9

    B.    The visual aspects of the notice are not sufficiently conspicuous. ............................ 11

IV.   Conclusion. ..................................................................................................... 19

**Table of Authorities**

**Cases**

*Ayala v. U.S. Dep't of Agric., Farm Serv. Agency*,
2012 U.S. Dist. LEXIS 99848 (E.D. Cal. July 17, 2012) ....................................................................2

*B.D. v. Blizzard Entm't, Inc.*,
292 Cal. Rptr. 3d 47 (Cal. Ct. App. 2022) ...............................................................................10, 11

*Bentley v. Control Grp. Media Co.*,
2020 U.S. Dist. LEXIS 118076 (S.D. Cal. July 6, 2020).................................................................4

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .............................................................................9, 11, 13, 14, 18

*Britton v. Co-Op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993)..............................................................................................................1

*Capps v. JPMorgan Chase Bank, N.A.*,
2023 U.S. Dist. LEXIS 69935 (E.D. Cal. Apr. 20, 2023)........................................................17, 18

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .....................................................................8, 10, 13, 14, 18

*Clark v. Cal. Ins. Guarantee Ass'n*,
200 Cal. App. 4th 391 (2011) ........................................................................................................7

*Colum. Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*,
23 F.4th 836 (9th Cir. 2022) .......................................................................................................18

*DeVries v. Experian Info. Sols., Inc.*,
2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017)........................................................17, 18

*Farmer v. Barkbox, Inc.*,
2023 U.S. Dist. LEXIS 222435 (C.D. Cal. Oct. 6, 2023)........................................................14, 15

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .................................................................................9, 11, 14, 18

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) ...........................................................................................2, 3, 4, 5

*Goonewardene v. ADP, LLC*,
6 Cal. 5th 817 (2019) ....................................................................................................................5

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)......................................................................................................................19

Plaintiffs' Opposition to
Defendant TicketNetwork's                     ii                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

*In re Henson*,
    869 F.3d 1052 (9th Cir. 2017)................................................................................3, 4

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ......................................................................9, 10, 11

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014)...................................................................................8

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)..................................................................2, 3, 4, 18

*Long v. Provide Commerce, Inc.*,
    200 Cal. Rptr. 3d 117 (Cal. Ct. App. 2016) ...........................................................10

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009)...............................................................................3, 6

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013)...............................................................2, 3, 4, 5

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014)........................................................................10, 11, 18

*Norcia v. Samsung Telcoms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017)...................................................................................5

*Oberstein v. Live Nation Entm't, Inc.*,
    60 F.4th 505 (9th Cir. 2023) ...........................................................10, 16, 17, 18

*Pineda v. Sun Valley Packing, L.P.*,
    2022 U.S. Dist. LEXIS 92139 (E.D. Cal. May 23, 2022)...........................................5

*Plata v. Lands' End, Inc.*,
    2024 U.S. Dist. LEXIS 237722 (C.D. Cal. Dec. 19, 2024) .......................................15

*Sellers v. JustAnswer LLC*,
    289 Cal. Rptr. 3d 1 (Cal. App. 2021).................................................8, 9, 10, 11, 14, 16, 18

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
    666 F. Supp. 3d 1089 (C.D. Cal. 2023) .................................................................14

*Shultz v. TTAC Publ'g, LLC*,
    2020 U.S. Dist. LEXIS 198834 (N.D. Cal. Oct. 26, 2020)......................................14

*Wayans v. BMW of N. Am., LLC*,
    2020 U.S. Dist. LEXIS 77167 (C.D. Cal. Jan. 7, 2020) .........................................7, 8

Plaintiffs' Opposition to
Defendant TicketNetwork's                    iii              Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

*Wilson v. Hatch Bank*,
  2024 U.S. Dist. LEXIS 58379 (S.D. Cal. Mar. 29, 2024)................................................................6, 7

*Zeto v. BMW of N. Am., LLC*,
  2020 U.S. Dist. LEXIS 213947 (S.D. Cal. Nov. 16, 2020) ...........................................................8

Plaintiffs' Opposition to
Defendant TicketNetwork's                    iv              Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

## I.    Introduction.

TicketNetwork admits that it does not have any arbitration agreement with Plaintiffs. Instead, TicketNetwork attempts to piggyback off of ETC's arbitration provision on ETC's website. But TicketNetwork—a nonsignatory to that provision—has no right to enforce it.

TicketNetwork cannot invoke equitable estoppel to enforce the arbitration provision. Equitable estoppel applies only when a plaintiff's claims seek to enforce the obligations of the contract containing the arbitration provision. Plaintiffs' claims do not seek to enforce the obligations of the terms and policies on ETC's website. They do not rely in any way on those terms and policies. Instead, Plaintiffs' claims are based on Defendants' unlawful drip-pricing practices, which violate California's consumer protection statutes and common law—a completely separate issue from the obligations in the website terms and policies. Under controlling Ninth Circuit precedent, equitable estoppel does not apply here.

Nor is TicketNetwork an intended third-party beneficiary of the arbitration provision. TicketNetwork must show that a motivating purpose of the arbitration provision was to benefit TicketNetwork. But the text of the provision shows the exact opposite. The arbitration provision expressly states that it applies to claims brought by a consumer against ETC—not TicketNetwork or any other third party. And its terms all apply only in the context of an arbitration against ETC; the provision is nonsensical in the context of an arbitration against TicketNetwork.

Separate from its inability to enforce arbitration as a nonparty, TicketNetwork's motion fails because there is no arbitration agreement to enforce. As explained in Plaintiffs' opposition to ETC's motion to compel arbitration, there was no mutual assent because ETC failed to make its arbitration provision sufficiently conspicuous. On this issue, TicketNetwork merely repeats the same arguments made in ETC's motion. They fail for the same reasons. So the Court need not even reach the third-party issue; it should deny both Defendants' motions because there is no agreement to arbitrate.

## II.    TicketNetwork has no right to compel arbitration under ETC's arbitration provision.

"The right to compel arbitration stems from a contractual right. That contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) (citation

omitted).  It is undisputed that TicketNetwork is not a party to any purported arbitration agreement between ETC and consumers.  TicketNetwork nonetheless asserts that it has the right to compel arbitration through equitable estoppel and its status as a third-party beneficiary of the arbitration provision.  Controlling law forecloses both arguments.

**A.  Equitable estoppel does not apply because Plaintiffs' claims against TicketNetwork do not rely on the terms and policies on ETC's website.**

Equitable estoppel is "narrowly confined" in the arbitration context.  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  It applies in only two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement."  *Id.* (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013)).

TicketNetwork relies only on "[o]ne of those circumstances" (the first one).  Mot. 8.  That is, it argues that Plaintiffs "must rely on the terms of the written agreement in asserting [their] claims against [TicketNetwork] or the claims are intimately founded in and intertwined with the underlying contract."  *Id.* (citation modified).[1]

This circumstance arises only where the plaintiff seeks "to hold the non-signatory liable pursuant to duties imposed by the agreement" containing the arbitration provision.  *Murphy*, 724 F.3d at 1229 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009)).  In other words, the plaintiff's claim must turn on the defendant's breach of a duty created by the agreement containing the arbitration provision.  Accordingly, the "correct analysis is whether Plaintiffs would

---

[1] TicketNetwork therefore waives any argument based on the second circumstance.  *See, e.g.*, *Ayala v. U.S. Dep't of Agric., Farm Serv. Agency*, No. 11-cv-00415, 2012 U.S. Dist. LEXIS 99848, at *23 (E.D. Cal. July 17, 2012) (arguments not made in opening brief are waived).  And any such argument would fail, because any "interdependent misconduct" of ETC and TicketNetwork was not "founded in or intimately connected with the obligations" of the terms and policies on ETC's website.  *Murphy*, 724 F.3d at 1229 (quoting *Kramer*, 705 F.3d at 1128-29).

Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration
    2    Case No. 2:24-CV-01983-DAD-AC

have a *claim* independent of the existence of the [agreement]." *Kramer*, 705 F.3d at 1131. The "claims themselves must intimately rely on the existence of the [agreement]"; it is not enough that the claims "presume" the existence of the agreement containing the arbitration provision. *Id.* at 1132. So, for equitable estoppel to apply, Plaintiffs' claims "must be based on '*the obligations imposed by the [terms and policies on ETC's website].*'" *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (emphasis in original) (quoting *Goldman*, 173 Cal. App. 4th at 223).

Here, Plaintiffs' claims against TicketNetwork are not based on the obligations imposed by the terms and policies on ETC's website. "Plaintiffs do not seek to enforce or challenge the terms, duties, or obligations" contained in the terms and policies. *Kramer*, 705 F.3d at 1132. The complaint "does not reference" the terms and policies at all. *Id.* Instead, Plaintiffs' claims are based on Defendants' unlawful drip-pricing practices and the requirements of California consumer protection statutes and common law. *See* Doc. No. 45 (Second Amended Complaint). The "resolution" of those claims "does not require the examination of any provisions" in ETC's terms and policies. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009). Indeed, if ETC never placed the terms and policies on its website, Plaintiffs would still have a claim because Defendants' drip-pricing practices violate California law. *See Murphy*, 724 F.3d at 1231 ("The UCL and CLRA allow Plaintiffs to sue Best Buy for misleading consumers regardless of whether or not they signed largely unrelated contracts with DirecTV."); *Kramer*, 705 F.3d at 1132 (claims were independent of purchase agreements where "a consumer … would still state a claim for which relief could be granted, absent a Purchase Agreement"); *Henson*, 869 F.3d at 1061 (claims were independent where a "consumer protection statute allows Henson to sue Turn for its allegedly deceptive acts and practices regardless whether Henson signed a Customer Agreement with Verizon"); *Goldman*, 173 Cal. App. 4th at 230 (equitable estoppel does not apply where "the claims are fully viable without reference to the terms of [the underlying] agreements"). So Plaintiffs' claims exist entirely independently of the terms and policies on ETC's website.

TicketNetwork argues that equitable estoppel applies because Plaintiffs' claims "presume the existence" of ETC's terms and policies, in that those terms purportedly govern the use of the website through which Plaintiffs purchased their tickets. Mot. 9. The Ninth Circuit has repeatedly rejected

such attempts to invoke equitable estoppel merely because the claims arise out of a transaction involving an agreement with an arbitration clause. *See, e.g.*, *Murphy*, 724 F.3d at 1230 ("Even if Best Buy is correct that Plaintiffs' claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel."); *Kramer*, 705 F.3d at 1132 ("Toyota is correct that Plaintiffs' claims presume a transaction involving a purchase of a Class Vehicle. The claims do not, however, rely upon the existence of a Purchase Agreement."); *Henson*, 869 F.3d at 1060 (in *Kramer*, "[w]e expressly rejected Toyota's argument that the plaintiffs' claims were necessarily based on the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred"). Under controlling law, "equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [underlying] agreements.'" *Murphy*, 724 F.3d at 1230 (quoting *Goldman*, 173 Cal. App. 4th at 230). As described above, Plaintiffs' claims do not rely on any violation of any obligation in the terms and policies on ETC's website. Those terms and policies "prove[] at most the existence of a transaction; Plaintiffs' claims do not depend on [their] terms." *Id.* at 1231.

TicketNetwork's reliance on *Bentley v. Control Grp. Media Co.*, No. 19-cv-2437, 2020 U.S. Dist. LEXIS 118076 (S.D. Cal. July 6, 2020), is misplaced for multiple reasons. To begin, *Bentley* did not engage at all with *Kramer*, *Murphy*, *Henson*, or *Goldman*—controlling precedent that squarely forecloses TicketNetwork's argument—or the principles of law set forth in those cases. *Bentley* also involved an entirely different situation. In *Bentley*, it was the plaintiffs who were nonsignatories to the arbitration agreements. *Id.* at *6. And those plaintiffs hired a company to use the defendants' websites—subject to an arbitration provision—to access the plaintiffs' criminal records on those websites and report the results to the plaintiffs. *Id.* at *2, 8. The court reasoned that the plaintiffs could not end-run around the arbitration provision by hiring a third party to use the defendants' websites rather than using those websites themselves. *Id.* at *9. By "relying on [the third party's] website subscriptions, Plaintiffs [sought] to benefit from the 'Terms of Use' without being bound by the contract's provisions." *Id.* And "without [the third party's] acceptance of the 'Terms of Use', Plaintiffs [had] no evidence to support their claim of Defendants' wrongdoing." *Id.*

Plaintiffs' Opposition to
Defendant TicketNetwork's                    4                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

Here, by contrast, Plaintiffs are not relying on any benefit from the terms and policies on ETC's website. The evidence supporting Plaintiffs' claims—Defendants' unlawful drip pricing—is entirely independent of the terms and policies on ETC's website. Nor did Plaintiffs seek an end-run around the arbitration provision by using a third party to do what Plaintiffs would have otherwise done themselves. And Plaintiffs certainly do not seek "to hold [TicketNetwork] liable pursuant to duties imposed by the [terms and policies]." *Murphy*, 724 F.3d at 1229 (quoting *Goldman*, 173 Cal. App. 4th at 220). Therefore, under controlling law, equitable estoppel does not apply.

**B.      TicketNetwork is not a third-party beneficiary of ETC's arbitration provision.**

"As the party seeking to compel arbitration," TicketNetwork bears "the burden of putting forward evidence affirmatively establishing its status as an intended third-party beneficiary of the agreement." *Pineda v. Sun Valley Packing, L.P.*, No. 1:20-cv-00169, 2022 U.S. Dist. LEXIS 92139, at *13 n.5 (E.D. Cal. May 23, 2022). The "mere fact that a contract results in benefits to a third party does not render that party a third party beneficiary; rather, the parties to the contract must have intended the third party to benefit." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) (quotation omitted). So TicketNetwork must show not only that it would benefit from enforcing the arbitration provision, but also that "a motivating purpose of the contracting parties was to provide a benefit" to TicketNetwork and that allowing TicketNetwork to enforce the arbitration provision "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019).

TicketNetwork has no evidence that the parties intended or expected TicketNetwork to benefit from ETC's arbitration provision. To the contrary, the text of the arbitration provision makes clear that it was intended to apply only to claims between a consumer (referred to as "USER") and ETC (referred to as "SITE"). The provision states: "All CLAIMS brought by USER *against SITE* must be resolved in accordance with this Arbitration and Dispute Resolution Section." Doc. No. 52-2 at 13 (emphasis added). This clearly identifies which claims were intended to be subject to arbitration: claims "against SITE"—not against other entities like TicketNetwork (referred to in the terms as "PROVIDER"). *Id.*

The details of the arbitration provision further confirm that it was not drafted with

Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration

5

Case No. 2:24-CV-01983-DAD-AC

TicketNetwork in mind. For example, it addresses the arbitration fees that will be paid by "USER" and "SITE." *E.g.*, *id.* at 12 ("SITE will pay all filing, administration, and arbitrator fees for any arbitration for a CLAIM of US$10,000 or less."). It does not say anything about who pays for what in an arbitration against a different entity, because it does not contemplate any such arbitration. Similarly, it states that the "AAA rules will determine whether the arbitration will take place through written submissions by USER and SITE, by telephone, or in person. SITE and USER shall both participate in the selection of an arbitrator." *Id.* Again, the only contemplated arbitrations are between consumers and ETC. It would not make sense for ETC to submit written documents or participate in the selection of an arbitrator in an arbitration between a consumer and TicketNetwork. As another example, the provision states that in certain circumstances, "[s]hould USER improperly file a CLAIM, SITE may recover attorneys' fees and costs up to US$1,000 from USER." *Id.* at 13. But it has no similar language applying to other entities, and it would not make sense for ETC to recover attorneys' fees and costs for an action between a consumer and TicketNetwork. Because the "arbitration agreement is premised on a disagreement between [ETC] and the [consumer]," "any disagreement between the [consumer] and a third party, such as [TicketNetwork], is simply not within the scope of the arbitration agreement." *Mundi*, 555 F.3d at 1045.

Moreover, where certain provisions were intended to benefit TicketNetwork, they say so explicitly. In a separate provision, the terms purport to limit the "SITE *or PROVIDER'S* liability to USER or any third party." Doc. No. 52-2 at 11 (emphasis added). The limitation on liability expressly applies to both "SITE" (ETC) and "PROVIDER" (TicketNetwork). By contrast, the arbitration provision refers only to "SITE," and does mention anything about "PROVIDER." *Id.* at 12-13. So while the limited-liability provision was expressly intended to benefit TicketNetwork, the absence of the same language in the arbitration provision confirms that TicketNetwork was not an intended beneficiary. *See, e.g.*, *Wilson v. Hatch Bank*, No. 23-cv-813, 2024 U.S. Dist. LEXIS 58379, at *16-17 (S.D. Cal. Mar. 29, 2024) (finding a "compelling inference" that a defendant was not an intended beneficiary of an arbitration provision where the terms contained "several instances where Defendant received rights and benefits—and was explicitly mentioned by name," but "within the language of the Arbitration Clause," it was "conspicuously absent").

Plaintiffs' Opposition to
Defendant TicketNetwork's                          6                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

TicketNetwork argues that "all parties to the terms and policies understood that … the 'Provider' (TN) would benefit from the ticket purchase contract" because the "business purpose of the transaction was to provide tickets to plaintiffs and revenues to each Defendant, including TN." Mot. 12.  But TicketNetwork must show that it is an intended beneficiary of the arbitration provision specifically—not merely the "ticket purchase contract."  That is because a "third party beneficiary can only enforce those promises made directly for his benefit." *Wilson*, 2024 U.S. Dist. LEXIS 58379, at *17 (citation modified) (quoting *Clark v. Cal. Ins. Guarantee Ass'n*, 200 Cal. App. 4th 391, 398 (2011)).  For example, a judgment creditor is a "third party beneficiary of the insurance contract between the insurer and the insured," but cannot enforce terms other than those made directly for its benefit.  *Clark*, 200 Cal. App. 4th at 398.  So regardless whether TicketNetwork was an intended beneficiary of the payment made to purchase the ticket, it cannot enforce the arbitration provision unless that specific provision was intended to benefit TicketNetwork.  *See, e.g.*, *Wilson*, 2024 U.S. Dist. LEXIS 58379, at *16-17 (defendant was express beneficiary of other terms in the contract but could not enforce the arbitration provision).  And, as described above, the plain language of the arbitration provision shows that it was not intended to benefit TicketNetwork.

TicketNetwork also argues that it is a third-party beneficiary of the arbitration provision because it was "mentioned as a third party 'PROVIDER' in the terms and policies." Mot. 12.  This argument fails for the same reason: being mentioned elsewhere in a contract does not show that the arbitration provision was intended to benefit TicketNetwork.  TicketNetwork (or "PROVIDER") is not mentioned once in the arbitration provision.  The reference to TicketNetwork elsewhere (in the limited-liability provision) actually shows the opposite of what TicketNetwork contends: that "the parties knew how to give enforcement powers to non-signatories when they wished to but chose not to do so" in the arbitration provision.  *Wilson*, 2024 U.S. Dist. LEXIS 58379, at *17 (quotation omitted).

The cases that TicketNetwork relies on further demonstrate why TicketNetwork cannot enforce the arbitration provision here.  In those cases, the arbitration clause explicitly applied to claims against "affiliates," of which the defendant was one.  *Wayans v. BMW of N. Am., LLC*, No. 19-cv-07319, 2020 U.S. Dist. LEXIS 77167, at *8 (C.D. Cal. Jan. 7, 2020); *Zeto v. BMW of N. Am.,*

Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration        7        Case No. 2:24-CV-01983-DAD-AC

*LLC*, No. 20-cv-1380, 2020 U.S. Dist. LEXIS 213947, at *28 (S.D. Cal. Nov. 16, 2020).[2] "Therefore, the plain language of the arbitration clause demonstrate[d] the parties' intent to expressly provide a benefit to" the defendant. *Wayans*, 2020 U.S. Dist. LEXIS 77167, at *8. But here, ETC's arbitration provision applies only to "SITE" (ETC) and "USER" (Plaintiffs); its plain language does not extend to affiliates or other third parties like TicketNetwork. Doc. No. 52-2 at 12-13. Moreover, in those other cases, "the Arbitration Clause provide[d] an entire phrase accounting for the scenario where Plaintiff sues third-parties relating to the vehicle." *Zeto*, 2020 U.S. Dist. LEXIS 213947, at *28. Here, by contrast, the plain language of the arbitration clause does not mention anything about TicketNetwork (or "PROVIDER") or provide any procedures for applying the arbitration clause to third parties like TicketNetwork. To the contrary, the entire provision discusses disputes between "USER" and "SITE." Doc. No. 52-2 at 12-13. As the *Zeto* court recognized, "the text of the arbitration agreement matters." *Zeto*, 2020 U.S. Dist. LEXIS 213947, at *27. And here, that text gives no indication that TicketNetwork is an intended third-party beneficiary.

## III.    TicketNetwork fails to establish mutual assent to ETC's arbitration provision.[3]

As the party moving to compel arbitration, TicketNetwork "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). TicketNetwork claims that Plaintiffs assented to ETC's terms by way of a sign-in wrap agreement. Sign-in wrap agreements tell users that by taking some action (such as clicking a button) they are agreeing to certain terms that appear on a separate, hyperlinked webpage. *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 15 (Cal. App. 2021).[4] Here, that notice appeared on the last page of ETC's checkout process and read, "By clicking 'Place Order', you are agreeing to EventTicketsCenter.com's terms & policies. All sales are final." Doc.

---

[2] *Wayans* and *Zeto* involved the same defendant and an identical (or nearly identical) arbitration provision.

[3] TicketNetwork's attempt to prove mutual assent is word-for-word the same as ETC's attempt. *Compare* Doc. No. 52 (TicketNetwork's motion) at 13-19, with Doc. No. 51 (ETC's motion) at 7-13. It fails for the same reasons.

[4] In reply in its prior briefing, ETC insisted that its notice was not a sign-in wrap agreement, instead calling it a "'hybrid' clickwrap-browsewrap agreement." Doc. No. 41 at 9. It did not explain the difference. And its notice indisputably fits the description of sign-in wrap agreements. *See, e.g.*, *Sellers*, 289 Cal. Rptr. 3d at 15; *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).

Plaintiffs' Opposition to
Defendant TicketNetwork's                          8                Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

No. 53-1 ("Cho Decl.") Ex. E.

To establish mutual assent, TicketNetwork must show that: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). These requirements are "essential if electronic bargaining is to have integrity and credibility." *Id.* (quotation omitted). TicketNetwork fails the first requirement: it has not shown that ETC provided reasonably conspicuous notice of the terms to its customers.

Courts analyze the conspicuousness of sign-in wrap agreements under a two-step process. First, courts must "evaluate the full context of the transaction, and consider whether that type of transaction contemplates entering into a continuing, forward-looking relationship governed by terms and conditions." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1017 (9th Cir. 2024) (quotation omitted). This then informs the second inquiry: whether "the visual aspects of the notice" are sufficient to alert reasonable consumers to the terms in the context of the transaction at issue. *Id.* at 1019.

TicketNetwork's motion skips the first step entirely. And at the second step, TicketNetwork fails to prove that its notice is conspicuous enough to alert reasonable consumers to the terms in the context at issue.

**A.    The context of the transactions—one-and-done ticket purchases—does not create expectations of ongoing contractual terms.**

"[T]he full context of the transaction is critical to determining whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms." *Sellers*, 289 Cal. Rptr. 3d at 26. That is because "a consumer that does not expect to be bound by contractual terms is less likely to be looking for them." *Id.* at 25; *see Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) ("[A] reasonable internet user is more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship.").

When a transaction involves an "ongoing relationship" between the website owner and the consumer, consumers might expect to find ongoing contractual terms. *Sellers*, 289 Cal. Rptr. 3d at

Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration                9                Case No. 2:24-CV-01983-DAD-AC

22. For example, creating an account for ongoing access to a video game is the type of "continuing, forward-looking relationship" that gives rise to an expectation of contractual terms. *B.D. v. Blizzard Entm't, Inc.*, 292 Cal. Rptr. 3d 47, 64 (Cal. Ct. App. 2022) (quoting *Sellers*, 289 Cal. Rptr. 3d at 22). Similarly, downloading a mobile game app gives rise to an expectation of ongoing contractual terms because "the entire point of the download is to have continued access." *Keebaugh*, 100 F.4th at 1020. So does going through "a full registration process" to create an ongoing account. *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). Each of these transactions "contemplates entering into a continuing, forward-looking relationship." *Sellers*, 289 Cal. Rptr. 3d at 22.

By contrast, "when a user simply purchases goods …, there is less reason for her to expect a continued relationship beyond the purchase." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025). For example, "the sale of a single item, such as a pair of socks, [is] a transaction in which most consumers would not expect to be bound by contractual terms." *Sellers*, 289 Cal. Rptr. 3d at 16. Similarly, "the purchase of a single flower arrangement" is not a transaction in which a consumer would "be on the lookout for a reference to Terms of Use." *Id.* at 25-26 (quoting *Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 126 (Cal. Ct. App. 2016)). Nor is "buying two tablet devices." *Keebaugh*, 100 F.4th at 1020 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)). This type of "one-and-done interaction" does not give rise to an expectation of ongoing contractual terms. *Id.*

The transaction here is a one-and-done interaction that does not create a continuing, forward-looking relationship. Like a purchase of socks, flowers, or tablets, a purchase of resale tickets from ETC's website is a one-off transaction that consumers do not expect to create ongoing contractual obligations. There is no forward-looking relationship involved in purchasing resale tickets from ETC's website. Nor do consumers need continued access to ETC's website to use their tickets. The context of the transactions here is exactly the context that the Ninth Circuit and California Court of Appeal have stated does not give rise to an expectation of ongoing contractual obligations. *See Keebaugh*, 100 F.4th at 1020; *Sellers*, 289 Cal. Rptr. 3d at 16.

TicketNetwork fails to address the context of the transactions at all. It focuses exclusively on the visual aspects of its website (which, as discussed below, are inadequate). Mot. 14-16. But the

Plaintiffs' Opposition to Defendant TicketNetwork's Motion to Compel Arbitration

10

Case No. 2:24-CV-01983-DAD-AC

Ninth Circuit and the California Court of Appeal have repeatedly stated that the context of the transaction is a necessary consideration. *See Godun*, 135 F.4th at 709; *Keebaugh*, 100 F.4th at 1017; *Sellers*, 289 Cal. Rptr. 3d at 26; *Blizzard*, 292 Cal. Rptr. 3d at 64. TicketNetwork's approach of analyzing the visual aspects in isolation is "largely subjective" and often leads to "seemingly inconsistent results." *Sellers*, 289 Cal. Rptr. 3d at 23. The context of the transaction is critical to determining how visible the notice must be to attract the attention of reasonable consumers. *See id.* at 25; *Godun*, 135 F.4th at 709. And here, TicketNetwork completely ignores it.

**B.      The visual aspects of the notice are not sufficiently conspicuous.**

To bind users to hyperlinked terms, a website must "take steps 'to capture the user's attention.'" *Berman*, 30 F.4th at 857 (quoting *Nguyen*, 763 F.3d at 1178 n.1). The visual design of the website must "direct [the user] to the notice." *Godun*, 135 F.4th at 714. The notice must be "prominently displayed" so that a user is likely to see it. *Berman*, 30 F.4th at 857. And, as just described, visual aspects of a notice must satisfy especially high scrutiny where, as here, context does not suggest ongoing contractual terms. *See id.* at 868 (Baker, J., concurring) (notices "must undergo the most rigorous scrutiny" in these circumstances).

ETC's notice does not meet this high standard. It is not prominently displayed to capture the user's attention. *See Berman*, 30 F.4th at 857; *Godun,* 135 F.4th at 713-14. To the contrary, it is designed to stand out as little as possible on an otherwise busy page:[5]

---

[5] The full page is even busier, with more elements. Cho Decl., Ex. E (full page). Plaintiffs provide this smaller excerpt here so that the notice is readable.

Enter Credit Card Information

🔒 100% SECURE

*Credit Card Number   🔒 #### #### #### ####

*Expiration Date   Month  ∨  /  Year  ∨

*Security Code   CVV/CVC   123 ❓

Protect Your Ticket To Kacey Musgraves, Lord Huron & Nickel Creek

* ◯ **Yes**, protect my ticket purchase for only $34.16 per ticket ($68.32 total).   **Highly Recommended**

✖ **Get reimbursed up to 100% of your ticket cost** if you can't attend the event due to covered reasons, like a covered illness or injury (yourself or a family member), mechanical breakdown, traffic accident, airline delay, and weather emergency

✖ **Receive 24/7 assistance** that can find parking info, book hotels and more

* ◉ ⚠ **Are you sure?** Your ticket purchase is not protected.

👥 12,305 people protected their tickets in the last 7 days

Ⓐ Recommended/offered/sold by Allianz Global Assistance. Underwriter: Jefferson Insurance Company. Plan incl. insurance & assistance services. Terms & exclusions (incl. for pre-existing conditions) apply. Plan & Pricing details, disclosures, Coverage Alerts .

We are a resale marketplace, not the ticket seller. Prices are set by third-party sellers and may be above or below face value.

By clicking "Place Order", your credit card will be charged $1,092.96 which includes ticket, service, and delivery fees.

By clicking 'Place Order', you are agreeing to EventTicketsCenter.com's terms & policies. All sales are final.

PLACE ORDER

Cho Decl., Ex. E.

The notice of the terms, which can be found above the "Place Order" button, appears in tiny font.  It is in the smallest font on the page—smaller even than the surrounding text.  It is also in a lighter font color than the surrounding text, which makes it less visible against the white background.  While other text on the page is a darker color—black, red, or darker gray—or contained in vibrant green or blue boxes, the notice of the terms is a light gray that blends in with the background.  The only possible reason to make the notice smaller and lighter than the surrounding text is to make it harder for consumers to see.  This is not a notice "prominently displayed" to "capture the user's attention."  *Berman*, 30 F.4th at 857 (quotation omitted).  It is a notice designed to blend in, so that users will skip over it.

Plaintiffs' Opposition to
Defendant TicketNetwork's                           12                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

The Ninth Circuit, the California Court of Appeal, and other district courts have all held that such design features render a notice too inconspicuous to put users on notice. In *Berman*, the Ninth Circuit held the following notice insufficient because the "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else":



*Berman*, 30 F.4th at 857, 860. Here, like in *Berman*, the notice is "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements." *Id.* at 857.

Similarly, in *Chabolla*, the Ninth Circuit held the following notice insufficient, in part because it was "notably timid in both size and color":

Plaintiffs' Opposition to
Defendant TicketNetwork's                        13              Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration



*Chabolla*, 129 F.4th at 1157, 1174 (quoting *Berman*, 30 F.4th at 857).  ETC's notice has the same deficiencies.

Other cases are in accord.  *See, e.g.*, *Godun,* 135 F.4th at 711 (notice was "in relatively small text" and "in a lighter color than other text on the page"); *Sellers*, 289 Cal. Rptr. 3d at 29 (notice was "in smaller print than any other print on the page and in a grey shade that contrasts with the … background significantly less than the other text on the page"); *Farmer v. Barkbox, Inc.*, No. 5:22-cv-01574, 2023 U.S. Dist. LEXIS 222435, at *6 (C.D. Cal. Oct. 6, 2023) (notice was in "small, light-colored font at the bottom of a page crowded with other graphics and text more likely to attract the user's attention"); *Shultz v. TTAC Publ'g, LLC*, No. 20-cv-04375, 2020 U.S. Dist. LEXIS 198834, at *10-11 (N.D. Cal. Oct. 26, 2020) (notice was "in very small text, and is dwarfed by the large and colorful green 'Complete Purchase' button below it"); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (notice was "the least conspicuous part of the webpage, and nothing in the webpage [drew] the viewer's attention to it").

Plaintiffs' Opposition to
Defendant TicketNetwork's                    14                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

In addition to the small, light-colored font, the placement of the notice only on the last page of a multi-stage checkout process further detracts from its conspicuousness.  In *Oberstein*, the Ninth Circuit found it relevant that the notice appeared "at each of three independent stages that a user must complete before purchasing tickets."  60 F.4th at 516.  This made it more likely that a customer would see the notice.  Other district courts have found notices insufficient when they appear only on the last page of a multi-stage checkout process.  *See Farmer*, 2023 U.S. Dist. LEXIS 222435, at *4 (notice insufficient where it appeared "only on [the] last payment screen" of a multi-stage checkout process); *Plata v. Lands' End, Inc.*, No. 5:24-cv-00723, 2024 U.S. Dist. LEXIS 237722, at *13 (C.D. Cal. Dec. 19, 2024) (notice insufficient where it was "only provided at the final stage of the purchase, rather than at all three stages").

Purchasing tickets on ETC's website is a multi-step process.  Users must first select a date and location for the event they wish to purchase tickets for.  Cho Decl., Ex. A.  They can do so by clicking a "Shop Tickets" button that is visually identical to the "Place Order" button on the last checkout page.  *Id.*  Users must then select which seats they want and confirm how many tickets they would like to purchase.  *Id.* Exs. B-C.  Next, users must enter an email address to receive the tickets and receipt and select a payment method.  *Id.* Ex. D.  After doing so, they must click a "Proceed to Payment" button—again, visually identical to the "Place Order" button—to proceed to the final checkout page.  *Id.*  On the final checkout page, users must enter their billing address and payment information, choose whether to purchase insurance for their tickets, and click "Place Order" to complete their purchase.  *Id.* Ex. E.  Red text on the page tells users to "Hurry," with a clock counting down.  *Id.*

The notice alerting users to the terms appears only on this last checkout page, at the end of a long process.  Moreover, the "Place Order" button that users must click to complete the purchase is visually identical to similar buttons that users would have clicked earlier in the checkout process.  It is therefore likely that users—especially when told to "Hurry"—would simply click the button on the last page, assuming that it had a similar effect to the earlier buttons, without scanning for additional notices that did not appear on the previous pages.  And that is especially so in the context of a one-and-done ticket purchase, where consumers do not expect to find ongoing terms.  *See supra* § III.A.

Plaintiffs' Opposition to
Defendant TicketNetwork's                                           15                         Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

TicketNetwork relies on *Oberstein*, which it contends has "similar facts" to this case. Mot. 15. But the facts of *Oberstein* are not similar to the facts here, for three reasons. First, in *Oberstein*, the context of the transaction involved a "full registration process," which "reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms." 60 F.4th at 517 (quoting *Sellers*, 289 Cal. Rptr. 3d at 29). Here, the one-and-done nature of the transaction does not put users on notice of potential terms. *See supra* § III.A. Second, in *Oberstein*, the website gave users notice of the terms "at each of three independent stages that a user must complete before purchasing tickets." 60 F.4th at 516. Here, the notice appears only on the last page of a multi-step process. Third, the notices in *Oberstein* were displayed much more prominently than the notice here. For example, the notice on the "Place Order" page appeared as follows:



Answering Brief for Defendants-Appellees at 9, *Oberstein*, 60 F.4th 505 (No. 21-56200). This notice—unlike the notice here—was prominently displayed to attract attention. It was in bold font, dark against a light background, and not overshadowed by more prominent text nearby. That is in

Plaintiffs' Opposition to
Defendant TicketNetwork's                    16                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

sharp contrast to the notice here, which is not bolded and is both smaller and lighter than the surrounding text.

TicketNetwork also relies on this Court's decision in *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-00806, 2023 U.S. Dist. LEXIS 69935 (E.D. Cal. Apr. 20, 2023), but *Capps* is distinguishable for the same reasons as *Oberstein*. In *Capps*, the notice appeared while the user was creating an account, which suggested an ongoing relationship governed by contractual terms. *Id.* at *11. And the notice was also in "regular sized, bold font," *id.*, as seen in this screenshot:

> By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy.
>
> I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to:
>
> - Provide my credit report (and/or credit score) to me for review while I have an account with ECS.
> - Notify me of other products and services that may be available to me through ECS or through unaffiliated third parties.
> - Notify me of credit opportunities and advertised credit offers.
>
> I understand that I may withdraw this authorization at any time by contacting ECS.
>
> **Create Your Account**

Declaration of David Williams, Ex. 1, *Capps*, No. 2:22-cv-00806, Doc. No. 32-2. Here, by contrast, the font of the notice is not regular sized, not bold, and is in a lighter color than the surrounding text. While the notice in *Capps* was designed to stand out, the notice here is designed to blend in.

The notice in *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953, 2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017) is similarly distinguishable because its "font size" and placement "adequately call[ed] a reasonably prudent user's attention." *Id.* at *18. In *DeVries*, unlike here, the notice was in regular-sized font, in a color that contrasted against the background, and was not overshadowed by more noticeable text:

Plaintiffs' Opposition to
Defendant TicketNetwork's                    17                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

Motion to Compel Arbitration at 3, *DeVries*, No. 16-cv-02953, Doc. No. 31.

As these screenshots demonstrate, the notices in *Oberstein*, *Capps*, and *DeVries* were much more prominently displayed than the notice here.  ETC's notice is more akin to the notices that courts have held insufficient, such as those in *Berman*, *Chabolla*, *Godun*, *Sellers*, and the other cases cited above.  ETC designed its notice to be smaller and in lighter font than the surrounding text—for the only possible reason of making it harder for consumers to see.  This is the opposite of what a website operator must do to bind users to hyperlinked agreements: "take steps 'to capture the user's attention.'" *Berman*, 30 F.4th at 857 (quoting *Nguyen*, 763 F.3d at 1178 n.1).

TicketNetwork also argues that the notice was sufficient because it "explicitly disclosed to each Plaintiff that by clicking 'PLACE ORDER,' she agreed to the terms." Mot. 16.  This is relevant only to the second element of the two-part test for mutual assent (whether the text of the notice "unambiguously manifests [the user's] assent to [the] terms"). *See Berman*, 30 F.4th at 856.  It is not relevant to the separate requirement that the notice be sufficiently conspicuous. *Id.*  And this makes sense: it does not matter what a notice says if the user does not see it.

Finally, TicketNetwork invokes the "liberal federal policy favoring arbitration." Mot. 5 (quotation omitted).  But the "public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Kramer*, 705 F.3d at 1126 (quotation omitted).  Moreover, that policy applies only to determining the "scope of arbitral issues," when "the formation and validity of the contract is not at issue." *Colum. Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 847 (9th Cir. 2022) (quotation omitted).  It does not apply to the antecedent question of whether an enforceable agreement to arbitrate exists. *Id.*; *see Granite Rock Co. v. Int'l*

Plaintiffs' Opposition to
Defendant TicketNetwork's                    18                    Case No. 2:24-CV-01983-DAD-AC
Motion to Compel Arbitration

*Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (courts should apply presumption of arbitrability "only where" there is "a validly formed and enforceable arbitration agreement"). Here, TicketNetwork fails to prove the existence of a valid arbitration agreement formed through mutual assent.

**IV. Conclusion.**

TicketNetwork's attempt to compel arbitration fails for two independent reasons. First, it has no right to enforce ETC's arbitration provision. Second, there is no arbitration agreement for it to enforce because it cannot establish Plaintiffs' mutual assent to ETC's arbitration provision. For both these reasons, TicketNetwork's motion to compel arbitration should be denied.

Dated: July 25, 2025

Respectfully submitted,

By: */s/ Gabriel Z. Doble*

Gabriel Z. Doble (Cal. Bar No. 335335)
gabe@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*