UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA HERNANDEZ and JULIE VARON,<br><br>Plaintiffs,<br><br>v.<br><br>EVENT TICKETS CENTER, INC., and TICKETNETWORK, INC.,<br><br>Defendants. | No. 2:24-cv-1983 DAD AC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY |

Before the court is a motion by defendants Event Tickets Center, Inc. ("ETC") and TicketNetwork, Inc. ("TN") to stay discovery pending the district judge's decision on their separate motions to compel arbitration (ECF Nos. 51, 52). ECF No. 62. The parties have filed the required joint statement. ECF No. 64. For the reasons below, the court grants the motion.

## I.   INTRODUCTION

**A.  Operative Complaint**

Defendant ETC is a platform for the purchase of resale tickets to various national and local events. ECF No. 45 at ¶ 3. Defendant TN operates the widget used on ETC's website to display ticket availability, prices, and fees. Id. at ¶ 4. The operative Second Amended Complaint alleges that until March 2024, defendants engaged in "drip pricing", a practice in which only a portion of the total price is displayed through part of the selection and checkout process. Id. at ¶¶ 1, 26. The Federal Trade Commission has condemned this practice because it manipulates

consumers into paying the fees by initially hiding them, hindering consumers' ability to compare prices until after they have spent significant time finalizing the order. Id. at ¶¶ 1, 19. Drip pricing is one of many "dark patterns" that tricks consumers into making decisions that they would not make in a transparent and competitive environment. Id. at ¶¶ 17-18.

In ETC's case, a consumer would first click on a particular event on the homepage, which would lead to a map of the venue with seats at various prices. Id. at ¶¶ 27-29. Upon selecting a seat, a confirmation pop-up would show the same price as before, multiplied by the number of tickets purchased. Id. at ¶ 30. The consumer would then enter their email address and their billing information on the following screens, during both of which the price shown on a right-hand sidebar matched the price previously listed. Id. at ¶¶ 31-32. On the final screen, consumers would input information about their method of payment, like a credit card number and security code, and choose whether to add ticket insurance. Id. at ¶ 33. Only on this final screen, below where the customer declines the offer of ticket insurance but above the blue "Place Order" button, does a line of grey text show a higher price than any prior screen. Id. at ¶ 34. If paying with a credit card, for example, the text will say the card will be charged this higher price "which includes ticket, service, and delivery fees." Id. At no point does the website distinguish which of these fees account for how much of the increased price. Id. at ¶ 37.

Plaintiffs allege that the inconspicuous placement of this single warning prevents most consumers from realizing they are paying more than the price originally advertised. Id. at ¶ 35. Plaintiff Hernandez, for example, paid $307.40 in April 2022 for a ticket defendants had initially asserted cost $206. Id. at ¶¶ 38-39. Similarly, plaintiff Varon bought two tickets for a total of $197.15 despite the $144 price advertised until just before she placed the order. Id. at ¶¶ 42, 44.

Plaintiffs seek to represent a class of all California customers who purchased a ticket on ETC's website before March 1, 2024, and unwittingly paid fees due to defendants' drip pricing practices. Id. at ¶¶ 47-53. The Second Amended Complaint alleges a violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq.; a violation of California's Consumer Legal Remedies Act; a violation of California's Unfair Competition Law; and a breach of quasi-contract. Id. at 15-20. On behalf of the proposed class, plaintiffs seek compensatory and

1  statutory damages, restitution, rescission, disgorgement and other equitable relief, pre-judgment
2  interest, post-judgment interest, an injunction prohibiting such drip pricing, and attorney's fees
3  and costs. Id. at 20.

### B. Procedural History

Plaintiffs commenced this action on July 19, 2024, and filed a First Amended Complaint on April 9, 2025. ECF Nos. 1, 36. ETC first moved to compel arbitration on April 23, 2025. ECF No. 37. Plaintiff filed the Second Amended Complaint ("SAC") on June 5, 2025, ECF No. 45, and the next day the district judge denied the motion to compel as moot, ECF No. 46. On July 11, 2025, defendants separately moved to compel arbitration of all claims in the SAC. ECF Nos. 51, 52. These motions are now fully briefed and submitted for decision by the district judge. ECF Nos. 53, 55 (opposition briefs), 56, 57 (reply briefs), 61 (supplemental authority).

Following submission of the arbitration motions, defendants jointly filed this motion to stay discovery pending a ruling on the motions to compel arbitration. ECF No. 62.

## II. LEGAL STANDARDS

A district court exercises "wide discretion in controlling discovery." Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988). It has similarly broad discretion to stay proceedings as an incident to its power to control its docket. See Clinton v. Jones, 520 U.S. 681, 706 (1997); see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005) (power to stay proceedings is incidental to court's inherent power to control cases with economy for itself, counsel, and litigants). The ordinary course of litigation is for discovery to proceed in the face of a pending dispositive motion. Courts disfavor blanket stays of discovery because "delaying or prolonging discovery can create unnecessary litigation expenses and case management problems." Salazar v. Honest Tea, Inc., No. 2:13-cv-02318 KJM EFB, 2015 WL 6537813, at *1, 2015 U.S. Dist. LEXIS 146357 at *4 (E.D. Cal. 2015) (citation omitted). However, a stay of discovery pending resolution of a potentially dispositive motion may further the goal of efficiency for the courts and the litigants. See, e.g., Little, 863 F.2d at 685.

Courts in the Ninth Circuit rely heavily on two factors to determine if delaying discovery is appropriate: (1) whether the pending motion is potentially dispositive of the case, or at least

3

1 would render unnecessary the discovery at issue; and (2) whether the pending motion can be
2 decided absent additional discovery. Salazar, 2015 WL 6537813, at *1, 2015 U.S. Dist. LEXIS
3 146357 at *4. The first prong is not satisfied if disposition of the motion would likely involve
4 leave to amend. See, e.g., Mlejnecky v. Olympus Imaging Am., Inc., Case No. 2:10–cv–02630
5 JAM KJN, 2011 WL 489743 at *9, 2011 U.S. Dist. LEXIS 16128 at *32 (E.D. Cal. Feb. 7, 2011)
6 (finding a pending motion to dismiss not dispositive of the case where the Magistrate Judge
7 anticipated that, even if the motion were granted, the District Judge would grant leave to amend).
8 "In applying the two-factor test, the court deciding the motion to stay must take a 'preliminary
9 peek' at the merits of the pending dispositive motion to assess whether a stay is warranted."
10 Yamasaki v. Zicam LLC, No. 21-cv-0259 HSG, 2021 WL 3675214 at *1, 2021 U.S. Dist. LEXIS
11 157156 at *4 (N.D. Cal. Aug. 19, 2021) (citation omitted).
12     Other factors which may influence the court's exercise of its discretion include "[t]he type
13 of motion and whether it is a challenge as a matter of law or the sufficiency of the allegations; the
14 nature and complexity of the action; whether counterclaims and/or cross-claims have been
15 interposed; whether some or all of the defendants join in the request for a stay; the posture or
16 stage of the litigation; the expected extent of the discovery in light of the number of parties and
17 complexity of the issues in the case; and any other relevant circumstances." Skellerup Industries
18 Limited v. City of Los Angeles, 163 F.R.D. 598, 601 (C.D. Cal. 1995) (citation and quotation
19 omitted). In sum, courts weigh the potential negative consequences of delay against the
20 possibility that the motion will be granted and eliminate the need for the discovery. Salazar, 2015
21 WL 6537813 at *1, 2015 U.S. Dist. LEXIS 146357 at *4 (citations omitted).

### III. DISCUSSION

23     For the reasons that follow, both prongs of the two-part test are satisfied. In general, a
24 motion to compel arbitration may be dispositive of a case and therefore justify a stay. See
25 Williams v. Experian, Case No. CV-23-01076-PHX-DWL, 2024 WL 73396767 at *3, 2024 U.S.
26 Dist. LEXIS 31078 at *9-10 (D. Ariz. Feb. 23, 2024). Having taken a limited "preliminary peek"
27 at the motions to compel arbitration in this case, the undersigned finds that they are "sufficiently
28 meritorious for a finding that the motions are potentially dispositive of the case." Stavrianoudakis

1  v. U.S. Dep't of Fish & Wildlife, No. 1:18-CV-01505 LJO BAM, 2019 U.S. Dist. LEXIS 219337, 2019 WL 9667685, at *3 (E.D. Cal. Dec. 20, 2019).  The motions seek arbitration of all plaintiffs' claims, not a limited subset of claims.  And unlike a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, granting of the motions to compel arbitration could not include leave to amend—or otherwise leave matters open in this court for active litigation.  Accordingly, the motions if granted would be fully dispositive.

On the merits. both defendants rely on an express arbitration clause included in the ETC "terms and policies" which are hyperlinked on the final checkout screen.  Customers are advised that "[b]y clicking 'Place Order', you are agreeing to [the hyperlinked] terms & policies."  ECF Nos. 45 at 11, 53 at 13, 53-1 at 15.  While plaintiffs dispute the sufficiency of this notice, defendants have countered with authority finding analogous notice to be effective.  Plaintiffs also contend that ETC waived any right to invoke the arbitration agreement, ECF No. 53 at 9, a question which is highly fact-intensive and which the undersigned will not prejudge.  See Trucmai Huynh v. Allstate Northbrook Indem. Co., No. 1:24-cv-0157 KES EPG, 2024 U.S. Dist. LEXIS 93414 *6, 2024 WL 2883228 (E.D. Cal. 2024) (declining to consider strength of opposing party's waiver argument as beyond the appropriate scope of a "'preliminary peek' at the motion to compel arbitration, which 'is not intended to prejudice the outcome of the motion.'") (citation omitted); see also Mlejnecky, 2011 U.S. Dist. LEXIS 16128 at *28 (recognizing awkward nature of "preliminary peek" procedure and noting that district judge alone is responsible for resolving merits of pending dispositive motion).  Defendants' counter-arguments on the waiver issue are sufficiently substantive to support a conclusion that the motions to compel arbitration may prevail.

TN's motion to compel arbitration presents one issue distinct from the general enforceability of the arbitration agreement and potential waiver of arbitration: whether TN may invoke an arbitration clause that is included in an agreement between plaintiffs and ETC.  A litigant who is not a party to an arbitration agreement may invoke such a clause if permitted under state law.  Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013).  TN asserts both equitable estoppel and a third-party beneficiary theory as bases for its invocation of the arbitration

5

provision in this case. Both are colorable arguments with a sound legal basis; whether they apply here is a matter for the district judge to decide. But a "preliminary peek" indicates that TN's third-party beneficiary argument is substantial enough to demonstrate that its motion to compel arbitration may be found meritorious. The undersigned need go no further than this to conclude that the first part of the two-part test for a stay is satisfied as to TN as well as to ETC.

As for the second part of the test, the motions to compel arbitration have been fully briefed and are submitted for decision. No party has indicated that further discovery is needed for resolution of those motions. Accordingly, application of the two-part test supports a stay of discovery pending resolution of the motions to compel arbitration. See Trucmai Huynh, supra (granting stay of discovery pending resolution of motion to compel arbitration); Zamudio v. Aerotek, Inc., No. 1:21-cv-1673 JLT CDB, 2024 U.S. Dist. LEXIS 35427, 2024 WL 863715 (E.D. Cal. 2024 (same); Garcia v. Experian Info. Sols., Inc., 2024 U.S. Dist. LEXIS 44638, 2024 WL 1117912 (N.D. Cal. 2024) (same); Ferrell v. Appfolio, Inc., 2024 U.S. Dist. LEXIS 4049, 2024 WL 132223 (C.D. Cal 2024 (same); Nguyen v. BMW of N. Am., LLC, 2021 U.S. Dist. LEXIS 105585, 2021 WL 2284113 (S.D. Cal. 2021) (same).

In further support of this conclusion, the court notes that the other relevant case factors weigh on balance neutrally or in favor of a stay. The case is at an early stage; although a putative class action, it is not complex; no counterclaims and/or cross-claims have been interposed; both defendants seek the stay; and the potential negative consequences of a stay are counterbalanced by the efficiencies. See Skellerup, 163 F.R.D. at 601. The court finds any prejudice to plaintiffs to be outweighed by the factors supporting a stay, especially the possibility that the motions will be granted and eliminate the need for the discovery. See Salazar, 2015 U.S. Dist. LEXIS 146357 at *4. Put differently, the negative consequences of a stay to plaintiffs and the negative consequences of denying a stay to defendants are relatively equally balanced. That being so, because application of the two-part test and efficiency concerns both support a stay, the undersigned will stay discovery pending Judge Drozd's resolution of the motions to compel arbitration.

////

1   For all these reasons, defendants' motion to stay discovery (ECF No. 62) is GRANTED.

2   DATED: October 29, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE